On Application for Rehearing
The opinion of December 11, 1992, is withdrawn and the following is substituted therefor.
In applying for rehearing, General Motors Acceptance Corporation ("GMAC") argues that this Court's opinion of December 11, 1992, "represents a substantial retreat from, if not an outright reversal of, many prior decisions of this Court, including the substantial body of Alabama case law set forth in GMAC's Application for Rehearing on 'agency,' 'non-modification,' 'a creditor's right to self-help repossession on default,' and 'estoppel.' " In response, Daisy Wiley states:
 "The plethora of arguments advanced by [GMAC] on rehearing are all dependent upon a single premise: in a consumer credit transaction, GMAC considers itself entitled to treat the existence of disability insurance purchased by the borrower at GMAC's instance as meaningless. As such, GMAC believes that it is entitled to repossess collateral when the buyer defaults on installment payments due to a disabling illness, notwithstanding the facts that the borrower purchased disability insurance made available by GMAC, gave GMAC proper notice of his or her intent to activate the insurance, and took all steps to activate the insurance."
Our purpose in substituting this opinion is to answer some of the charges that GMAC has made in its application for rehearing and to make it clear that we have not changed the law regarding peaceable self-help repossession by a creditor except in those very limited fact situations, such as the one presented in this case, in which (1) the creditor knows that the debtor has purchased credit disability insurance to pay the debt if the debtor becomes disabled; (2) the debtor becomes disabled and the creditor knows that fact; (3) the debtor desires to activate the disability insurance; and (4) the creditor nevertheless proceeds to repossess the collateral, even though peaceably.
The plaintiff, Daisy M. Wiley, appeals from a summary judgment in favor of the defendant, GMAC, on her claims alleging conversion and commercially unreasonable sale after repossession of an automobile. We affirm the judgment as to the claim of a commercially unreasonable sale and reverse and remand as to the conversion claim.
On March 4, 1989, Wiley bought a 1987 Nissan Pulsar automobile from Trail Pontiac — GMC *Page 520 
Truck, Inc., in Mobile. Wiley signed an installment sale contract, with "GMAC" written at the top, that obligated her to pay $320.63 per month for 42 months, with the first payment due on April 18, 1989. The contract created a security interest in GMAC with a right of repossession upon default; GMAC perfected that security interest by placing a lien on the certificate of title.
The contract allowed Wiley to choose whether she would buy insurance to pay her installments if she became disabled. The pertinent provision states:
 "Optional Credit Insurance. Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign for them and agree to pay the additional cost. If you want this insurance, check the insurance desired and sign below. If you have chosen this insurance, the cost is shown in 4C of the itemization above."
Wiley chose to buy the insurance, and the contract listed Georgia International Life Insurance Company as the insurer and Atlanta, Georgia, as the insurer's location. Wiley paid a premium of $727. 19, which was included in her monthly payments. The contract provided further that "[t]his policy will pay your debt on this contract up to $13,466.46." The policy required that notice of disability be given within 90 days.
Wiley suffered a disabling stroke on August 10, 1990. That same day, the Mobile Police Department seized her car as part of a suspected illegal drug transaction.[1] The police discovered the lien on the title and notified GMAC that it could obtain a release.
Essie Henley, Wiley's daughter, went to the police department to see about having her mother's car returned. The police department directed her to GMAC. Henley claims in her affidavit that she spoke to a man named Johnson at GMAC on August 13, 1990,[2] that she told him of Wiley's disability, and that he directed her to Trail Pontiac. James Johnson testified for GMAC in a deposition, denying that Henley told him that Wiley was disabled but acknowledging that the existence of Wiley's disability insurance was noted in GMAC's file. Henley obtained a disability claim form from Trail Pontiac, which was completed by Wiley's attending physician on September 20, 1990. Georgia International received the claim form on October 10, 1990, and sent GMAC a check dated October 18, 1990, for $374.07.
Wiley did not pay her August and September 1990 installments. GMAC notified her by letter on September 26, 1990, that it had repossessed her car and was going to sell it at a private sale sometime after October 9, 1990, unless she paid the accelerated balance and expenses. GMAC sold the car on October 25, 1990, for $5,200 and then informed Wiley that she owed a deficiency of $2,941.59. This amount did not reflect the $374.07 check from Georgia International. GMAC received a check for $438. 19 sometime after November 20, 1990, but returned it to Georgia International.
On January 7, 1991, Wiley sued GMAC and two police officers involved in the seizure of her car. She alleged conversion against all defendants and a commercially unreasonable sale and a violation of the Federal Truth-in-Lending Act against GMAC. Wiley later voluntarily dismissed her claim under the Truth-in-Lending Act. GMAC asserted a counterclaim for $2,941.59 but later amended its counterclaim to $2,514.08. GMAC also moved for a summary judgment on both of Wiley's remaining claims. The trial court dismissed the claims against the police officers without prejudice, struck GMAC's counterclaim, and granted GMAC's motion for summary judgment. Wiley appeals from the summary judgment.
The trial court correctly granted GMAC's motion for summary judgment only *Page 521 
if there was no genuine issue of material fact and GMAC was entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. On review, we must consider the evidence in a light most favorable to Wiley. Harris v. Macon County,579 So.2d 1295, 1297 (Ala. 1991). If GMAC makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, then the burden would shift to Wiley to present substantial evidence to the contrary. See Ala. Code 1975, § 12-21-12; Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 798 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
It is undisputed that Wiley missed her August and September 1990 payments; therefore, the contract plainly gave GMAC the right to repossess and resell the car. However, the contract, which a factfinder could reasonably conclude was prepared by GMAC, also reflects that Wiley chose insurance through Georgia International that would cover her payments during her disability and states that the insurance policy "will pay your debt on this contract up to $13,466.46." The crux of this case is the effect of the disability insurance, and the ultimate issue is whether GMAC had a right to repossess and resell the car upon Wiley's default without regard to the fact that she had elected to obtain the disability insurance policy mentioned in the contract.
After hearing oral argument and carefully examining the record and the cases that GMAC cites in its application for rehearing, we conclude that Wiley was given the opportunity to buy credit disability insurance as part of an installment sale and that she chose to buy the insurance to protect her against the very act that GMAC caused to occur — repossession and resale of her automobile. Considering these facts, could Wiley reasonably expect that her car would not be repossessed if she was in fact disabled? Stated differently, when Wiley elected to purchase the credit disability insurance, did GMAC impliedly promise that it would not declare a nonpayment default if Wiley became disabled and gave GMAC notice, so long as she complied with the terms of the disability insurance agreement? We answer both questions in the affirmative.
We find substantial evidence that GMAC made at least an implied promise to Wiley that it would not repossess her car if it knew that she had purchased credit disability insurance and that she had, in fact, complied with the terms of the policy to have the debt paid during the period of her disability.[3] We find it significant that the contract unequivocally stated that the insurance made available "will pay your debt on this contract up to $13,466.46."
Some of the material facts are disputed. For example, regarding whether GMAC had knowledge, it is disputed whether Henley told Johnson or someone else at GMAC on August 13, 1990, that Wiley had become disabled, but there was evidence of the disability in GMAC's file. In considering the evidence in a light most favorable to Wiley as the nonmoving party, we find a question of fact as to whether GMAC knew on August 13, 1990, of Wiley's disability and of her intent to activate the disability insurance. It is apparently undisputed that Wiley notified Georgia International within 90 days, and it is undisputed that Georgia International sent the first check within 90 days.
There is substantial evidence that the installment sales contract was on a form provided by GMAC and that the debtor was given an option to purchase credit disability insurance to pay the debt evidenced by the contract. When considered along with what we find to be substantial evidence of a genuine issue of material fact — Henley's sworn statement that she told Johnson about Wiley's disability and Wiley's intent to activate *Page 522 
the insurance — we hold that this evidence, if believed by the factfinder, would be sufficient for the factfinder to conclude that GMAC breached an implied promise arising out of the relationship of the parties — a promise that it would not repossess Wiley's automobile if she became disabled and complied with the terms of the credit disability policy. Thus, we hold that the summary judgment in GMAC's favor on the conversion claim was improper.
We agree with the trial court, however, that the summary judgment was proper as to the claim of a commercially unreasonable sale. The doctrine of commercial unreasonableness applies to the disposition of the collateral after default and repossession. See Ala. Code 1975, § 7-9-504. Wiley does not dispute that GMAC properly notified her that the automobile would be sold unless she paid the accelerated balance and expenses. Furthermore, the record does not contain the evidence necessary to prove a claim of commercial unreasonableness:
 "[I]n order to prove a commercially unreasonable disposition of collateral, the party alleging it must present evidence of what constitutes reasonable commercial practices, usual manner of sale, and what the current market price was for the collateral at the time of the sale. In addition, the party must present some evidence that the disposition at issue failed to conform to one or more of the above requirements."
Terrell v. John Deere Co., 491 So.2d 918, 920 (Ala. 1986).
Based on the foregoing, we reverse the summary judgment as to the conversion claim, but we affirm it in all other respects.
OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART;REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Apparently, an acquaintance of Wiley's granddaughter was using the car at the time, and Wiley was not involved.
[2] Henley's affidavit lists the date as "Monday, August 13, 1991." GMAC argues that the listing of the date as 1991 demonstrates that GMAC did not receive notice of Wiley's disability within 90 days, as required by the contract. This argument is meritless. The affidavit refers to the events it addresses as happening within a few days; moreover, it is undisputed that GMAC received a check from Georgia International on Wiley's behalf dated October 18, 1990.
[3] GMAC does not dispute that Wiley was disabled. Its sole argument is premised upon its understanding of the law that it can repossess peaceably at any time there is a default, even though it knows that the debtor has elected to purchase credit disability insurance, which it has financed, and that the debtor is, in fact, disabled.