[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 339 
One of the basic issues presented by this appeal concerns the duties and obligations of the parties in view of the fact that the plaintiff bought credit disability insurance when he financed the purchase of logging equipment that was later repossessed when he failed to make timely payments after becoming disabled. The plaintiff, Alton M. Pate, sued seven defendants, variously alleging breach of contract, negligence, fraud, and conversion. The legal issues vary according to the respective defendants, but the resolution of each centers on whether Pate presented substantial evidence that he is entitled to recover against any of the defendants and whether the trial court properly entered the summary judgments in favor of each of the seven defendants without specifically setting a hearing and before the plaintiff had deposed two defendants. We affirm in part; reverse in part; and remand.
 Facts
The facts, viewed most favorably to Pate, are as follows:
Pate owned and operated a logging business. In 1984, he bought a loader from the defendant Randy Rollison, of Rollison Logging Equipment, Inc., and later that year he bought a skidder, executing conditional sales contracts naming Rollison Logging Equipment as the secured party. Rollison arranged financing through the defendant Associates Commercial Corporation, a finance company, and assigned the security interests to Associates.
Along with each sale, Pate bought credit life and accident and health insurance to pay his installments if he became disabled. The *Page 340 
premiums for the insurance were included in his payments. Rollison arranged the purchase of the insurance through the defendant Les Anderson, d/b/a Anderson Insurance Agency, a broker. To ensure adequate coverage, Anderson placed seven policies with six different insurers, including the defendants Roosevelt National Life Insurance Company of America and Independent Life and Accident Insurance Company.
In January 1985, Pate became disabled with esophagitis and failed to make his payments as required by the contracts. He notified Randy Rollison, who told Laverne Rollison, the company president, who then notified Anderson by letter that Pate was ill and asked that claim forms be sent to Pate. Laverne Rollison also wrote a letter to Pate explaining that there were seven policies and that forms would have to be sent to each insurer each month; he offered to forward Pate's completed forms to the insurers.
Many of the payments from the insurers were late; consequently, Associates added late charges to Pate's account. Pate claims that he did not regularly receive the forms, but that when he did receive them, he completed them and promptly sent them to the insurers. Letters from Anderson to Pate indicate that the payments were late because of Pate's delays in returning the completed forms, improperly completed forms, physician changes, or disputes over whether Pate was totally disabled.
In May 1987, Laverne Rollison notified Pate and Randy Rollison that Associates had given him two options: either repossess the equipment or rewrite the sales contracts. Randy Rollison discussed the options with Pate and proposed executing a new financing arrangement that would combine the two existing contracts. Although Pate expressed concern about entering into a new agreement, he wanted to keep the equipment and, after consulting a lawyer, he signed the new contract.
In January 1989, Laverne Rollison notified Pate that all the insurance policies had expired and that Pate would be responsible for the remaining payments. When Pate had made no payments by July 1989, Rollison, as instructed by Associates, repossessed the loader, along with the trailer to which it was attached. After notifying Pate, Rollison sold the loader.
In February 1990, Pate sued Rollison Logging Equipment, Inc., Rollison Logging Equipment of Alabama, Inc., Associates, and various fictitiously named defendants, for damages based on fraud, conversion, breach of contract, and negligent performance of contractual duties. Through a series of amendments, Pate added Laverne Rollison as a defendant; substituted Anderson, Independent, and Roosevelt for certain fictitiously named defendants with respect to the negligent performance claim and added a claim against those same defendants for breach of contract;[1] and added a claim against Associates for damages based on negligence. The defendants filed separate motions for summary judgment. After a pre-trial conference in February 1992, but without having set a hearing on the summary judgment motions, the trial court entered summary judgments for all defendants on all claims. Pate appeals.
 Standard of Review
A summary judgment is proper upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Ala.R.Civ.P. Initially, the burden is upon the moving party to make a showing, but if the moving party makes a prima facie showing of entitlement to a summary judgment, then the burden shifts to the nonmoving party. Maharry v. Cityof Gadsden, 587 So.2d 966, 968 (Ala. 1991). Because this action was not pending on June 11, 1987, the nonmoving party must offer "substantial evidence" to overcome the prima facie showing. Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment *Page 341 
can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Our standard of review is de novo,Maharry, 587 So.2d at 968, but we examine the evidence in a light most favorable to the nonmoving party. Moore v. SpillerAssociated Furniture, Inc., 598 So.2d 835, 836 (Ala. 1992).
 I. Notice
Before addressing whether the summary judgments were substantively proper, we first address Pate's argument that the trial court violated Rule 56(c), Ala.R.Civ.P., by ruling on the motions for summary judgment without first setting a hearing on those motions. Pate argues that he was surprised when the trial court ruled on the motions at the pre-trial conference.
Before the August 1992 amendment, Rule 56(c) provided in part that "[t]he motion shall be served at least 10 days before the time fixed for the hearing," but "this Court [had] construed Rule 56(c) as providing for a ten-day notice of hearing on a motion for summary judgment." Kelly v. Harrison,547 So.2d 443, 445 (Ala. 1989) (citations omitted). The rule does not require a special hearing, however, because the trial court has a range of discretion in applying Rule 56(c). Id.
Pate had due notice of the pre-trial conference set for February 13, 1992, by which time the motions for summary judgment had been pending for several months. Two days before the pre-trial conference, Pate filed responses, including his own affidavit, to all the motions for summary judgment except Roosevelt National's, to which he had previously responded. In view of these facts, we cannot say that the trial court abused its discretion in not setting a specific hearing on the motions.
 II. Judicial Disqualification
Citing Nash v. Cosby, 597 So.2d 209, 211 (Ala. 1992) (Houston, J., concurring specially) ("[t]he Court must provide a level playing field"), Pate argues that the trial judge's comments and actions at the pre-trial conference indicated bias against him. Pate cites what he contends are disparaging remarks, such as a statement by the trial judge that he did not want to hear a response from Pate's counsel to a particular argument, and he cites the refusal of the trial judge to allow him a seventh amendment of his complaint.
A judge is presumed not to be prejudiced, and the moving party has the burden of proving that a judge is biased.Banks v. Corte, 521 So.2d 960, 962 (Ala. 1988). "A mere accusation of bias, unsupported by substantial fact, does not require disqualification of a judge." Id.; see also Cribbs v.Shotts, 599 So.2d 17, 19 (Ala. 1992).
Our review of the transcript of the pre-trial conference shows that Pate failed to meet his heavy burden of showing bias. We view the trial judge's remarks as nothing more than attempts to encapsulate Pate's position according to characterizations made by Pate's own counsel. Even though the trial judge said that he did not want to hear Pate's response to a particular point, he nevertheless allowed Pate's counsel to respond fully. As discussed infra, the trial judge did not abuse his discretion in not allowing Pate to amend his complaint. In connection with Pate's claim of judicial bias, we note that Pate did not file a motion asking the judge to disqualify himself; consequently, Pate has failed to show prejudicial error on this point.
 III. The Claims Against the Rollison Defendants
Pate claims fraud, conversion, and negligent performance of contract against the two Rollison companies and Laverne Rollison. These three defendants will sometimes be referred to as "Rollison."
 A. Fraud
Regarding the fraud claim, Pate must establish: (1) that a misrepresentation of a material fact was made to him; (2) that it was made willfully to deceive or was made recklessly without knowledge; (3) that under the circumstances he justifiably relied upon the misrepresentation; and (4) that he was damaged as a proximate consequence. Harrell v.Arrington, 595 So.2d 1356, 1358 (Ala. 1992). *Page 342 
Rollison contends that Pate did not justifiably rely on any representations by Rollison when he executed the new contract, because Pate testified that he was concerned about the new contract and was suspicious enough to discuss the matter with a lawyer before signing it. Assuming,arguendo, that this satisfies Rollison's burden of making a prima facie showing, the question becomes whether Pate presented substantial evidence of a genuine issue of material fact as to whether he justifiably relied on Rollison's alleged representations — that Pate's equipment would be repossessed if he did not sign the new contract and that the new contract would be void if the insurers paid according to the old contracts. Pate claims that these were inducements to get him to sign the new contract.
Pate admits that, based on his experience in buying equipment, he had reservations about rewriting the contracts and that he consulted a lawyer. He asserts, however, that the lawyer did not review the proposed contract. Pate testified, by deposition, that he and Randy Rollison were friends; that he had relied on Randy Rollison to explain the terms of the proposed new contract to him, because he could not read; and that when he signed the new contract, he was very ill and almost bedridden. Unquestionably, Pate incurred greater debt under the new contract. These circumstances, when considered in a light most favorable to Pate as the nonmoving party, constitute substantial evidence from which a jury could conclude that Rollison induced Pate to sign the new agreement and did so knowing that disability insurance benefits were available to prevent a default under the original agreement; therefore, a genuine issue of material issue of fact was presented, which made the summary judgment improper as to the fraud claim against the Rollison defendants.
 B. Conversion
Pate argues that Rollison converted the loader and the attached trailer by repossessing and reselling them pursuant to the new contract, which Pate contends was induced by fraud. Rollison argues that Associates, acting through Rollison, lawfully repossessed and resold the loader upon Pate's default. See Ala. Code 1975, §§ 7-9-503 and -504. Rollison argues that the trailer was also lawfully repossessed because the contract provided that "[a]ny property other than Collateral which is in or upon the Collateral at the time of repossession may be taken and held without liability until its return is requested by debtor," and that Pate had not requested that the trailer be returned. R. 209.
If Pate proves his fraud claim, then the new contract, pursuant to which the equipment was repossessed and resold, would be void, because fraud vitiates a contract. BrenardManufacturing Co. v. Pearson, 213 Ala. 675, 676, 106 So. 171,172 (1925). Even if the new contract was void because of fraud, and repossession and resale were undertaken pursuant to the original contract, there is evidence, albeit disputed, of representations made by Rollison and of other acts and circumstances surrounding the execution of the new contract from which a jury could conclude that the Rollison defendants at least impliedly waived their rights under the original contract. See Industrial Machinery, Inc. v. Creative Displays,Inc., 344 So.2d 743, 746 (Ala. 1977) ("[t]he waiver of contract provisions may be implied from acts and circumstances surrounding the performance of the contract"). Also, in the recent case of Wiley v. General Motors Acceptance Corp.,624 So.2d 518 (Ala. 1993), this Court held that, depending upon the facts of the case, a creditor can have a duty not to repossess a chattel when the creditor knows that there is credit disability insurance and has impliedly promised that the insurance will pay the claim. Consequently, we reverse the summary judgment with respect to the conversion claim against the Rollison defendants.
 C. Negligent Performance of Contract
Pate claims that, as part of a contract to provide insurance, Rollison volunteered to help Pate obtain and return the claim forms and later negligently failed to act after learning that Pate was not receiving forms and when Independent Life sent claim checks to Rollison instead of Pate. However, it appears that Rollison's only involvement *Page 343 
with the insurance contracts may have been to ask Pate if he wanted coverage and to ask Anderson to place the insurance. Even if considered a broker or an agent, Rollison was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts. Ligon Furniture Co. v.O.M. Hughes Insurance, Inc., 551 So.2d 283, 285 (Ala. 1989). The primary case upon which Pate relies, Vines v. CrescentTransit Co., 264 Ala. 114, 85 So.2d 436 (1955), is inapposite, because without a contract, there can be no breach of a contractual duty. In this respect, the summary judgment was proper as to the Rollison defendants.
Pate further argues, however, that, even without a contractual duty, Rollison assumed a duty to help him. Rollison agreed to help Pate obtain and return the necessary claim forms. Rollison wrote four letters to Anderson to inform Anderson of Pate's disability, to request that forms be sent to Pate, to request that Anderson determine if the insurers were sending the forms, and to request that Pate's claim status be revised because a physician had reported that Pate was only partially disabled. Rollison argues that the letters were written as a courtesy to Pate as a customer, not as a voluntary assumption of a duty.
A duty can arise when a person having no duty to act on another's behalf voluntarily does so. Palomar Insurance Corp.v. Guthrie, 583 So.2d 1304, 1306 (Ala. 1991). Even if Rollison assumed such a duty, however, Pate has offered no substantial evidence of a breach of that duty. The correspondence among Pate, Rollison, and Anderson, and the testimony of Ethel Pate, Alton Pate's wife, indicates that Rollison acted promptly each time Pate asked for help in obtaining forms. The summary judgment was proper regarding the negligent performance-of-contract claim against the Rollison defendants.
 IV. The Claims Against Anderson A. Breach of Contract
Pate claims that Les Anderson, d/b/a Anderson Insurance Agency, breached a contract to make disability payments. Pate candidly admits that "it is doubtful that the plaintiff can prove that Anderson entered into a contract with him to make disability payments." Appellant's brief at 74. Pate's doubts are well-founded. The insurance contracts were between Pate and the insurers. Anderson cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party. See Ligon Furniture Co., 551 So.2d at 285.
 B. Procedural Error
Pate also argues that the trial court committed reversible error by entering the summary judgment for Anderson after having granted Pate five days from the pre-trial conference to amend his complaint to state a negligence claim.[2] Pate contends that he should have been allowed to amend his complaint to allege that Anderson committed negligence in placing the insurance with six insurers without notifying him that he was doing so. We disagree. Anderson was a broker and not a party to any of the insurance contracts. Once a prospective insured and a broker agree regarding the procurement of insurance, the broker has a duty to use reasonable care to effect coverage and may be liable for negligently failing to do so, e.g., Montz v. Mead Charles,Inc., 557 So.2d 1, 4 (Ala. 1987); Highlands UnderwritersInsurance Co. v. Eleganté Inns, Inc., 361 So.2d 1060, 1065
(Ala. 1978), but Anderson procured the insurance coverage that Pate bought, and that was the extent of his duty.
The denial of leave to amend was a matter within the sound discretion of the trial court. Ex parte Reynolds,436 So.2d 873, 874 (Ala. 1983). The trial court did not abuse its discretion in denying Pate leave to amend his complaint against Anderson. *Page 344 
The trial court also had discretion to rule on the motions for summary judgment even though Pate had not yet deposed Anderson. The fact that discovery is pending does not bar a summary judgment unless "it can be ascertained that discovery is crucial to the nonmoving party's case," Hope v. Brannan,557 So.2d 1208, 1212 (Ala. 1989), and the nonmoving party has the burden of showing that the discovery is crucial. Id.
Pate argues that Anderson could provide information that is relevant to the rights, duties, and responsibilities concerning credit insurance. Considering that Anderson fulfilled his duty in placing the insurance, Pate has not shown that his testimony is crucial. The trial court did not abuse its discretion in ruling before Anderson was deposed.
 V. The Claims Against Associates
Pate asserts several claims against Associates: breach of contract, negligent performance of contract, negligence, fraud, and conversion. The fraud and conversion claims are based on a theory that Rollison acted as an agent of Associates in inducing Pate to execute the new contract and in repossessing and reselling the equipment. Initially, we note that, contrary to Associates' assertion, Pate has preserved his agency argument regarding the fraud and conversion claims, because he alleged in his complaint that the defendants, including Associates, acted through Rollison in making false representations concerning the conditional sales agreements and in repossessing and reselling the equipment.
In support of its motion for summary judgment, Associates relied in part on the deposition testimony of Laverne Rollison and Randy Rollison and the affidavit of John Moyer, the manager of the Associates office in Indianapolis, Indiana, where the contracts were purchased from Rollison. This evidence reveals that Associates did not participate in the sale of insurance, did not require insurance as a condition of financing, and did not process any claims for benefits. Based on Pate's default under the conditional sales contracts and Associates' rights as Rollison's recourse assignee, Associates asserts that it made a prima facie showing that it was entitled to a summary judgment.
In rebuttal, Pate contends that Associates had a duty to furnish claims information to Roosevelt and to notify Pate that further medical information was required and contends that Associates was negligent in not forwarding the claim forms to him after receiving them from Roosevelt. Pate offers Roosevelt's answers to interrogatories, which indicate that the normal method of activating the insurance was for the debtor to present a claim to the creditor, who would then forward the claim to Roosevelt, and that upon receipt of a properly completed claim form, Roosevelt would send a payment check and letter to Associates with another form and instructions to forward the form to Pate. Along with the answers to interrogatories, Roosevelt filed a record of this account. Associates denies receiving the forms from Roosevelt.
Considered in a light most favorable to Pate as the nonmovant, the evidence reveals that employees of Associates knew: (1) that Pate was disabled; (2) that Pate's installments were being paid by insurance bought at the time the equipment was purchased and financed; and (3) that the insurers required that forms be completed and sent monthly to continue the payments. Again, considering our recent decision in Wiley, we reverse the summary judgment on all claims against Associates except the negligent performance claim and remand the cause to the trial court with instructions to consider the claims in light of the principles of law set out in Wiley. We affirm the summary judgment as to the negligent performance claim, for the same reasons we affirm the summary judgment on the negligent performance claim against the Rollison defendants.
 VI. The Claims Against Roosevelt and Independent
Pate claims damages from Roosevelt and Independent for breach of contract and for negligent delays in paying and handling his claims. Although these insurers paid all that they were obligated to pay under the contracts, Pate asks us to impose upon providers of credit disability insurance not only *Page 345 
a duty to pay, but also a duty to pay in a timely manner so as to prevent the creditor from repossessing the secured collateral. He asks us to impose such a duty because, he says, credit disability insurance "is quite distinct from other forms of insurance in that its sole function is to satisfy, on a periodic basis, the debt which it insures," and, he says, "This differs significantly from other forms of accident and health insurance[,] which merely pay a lump sum to the insured following a loss." Appellant's brief at 80. He also asks for damages for consequential loss of income, emotional distress, and mental anguish.
Pate contends that the insurers failed to pay because of a poor company policy of not paying until receipt of proof of disability during the previous claim period. He argues that the delays were exacerbated by Roosevelt's sending forms to Associates instead of directly to him and by Independent's lack of specific claim-filing procedures, which he says resulted in a misdirection of forms and in payment delays.
This Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims. See, e.g., Armstrong v. Life Insurance Co. of Virginia,454 So.2d 1377, 1380 (Ala. 1984), overruled on other grounds, Hickox v.Stover, 551 So.2d 259, 264 (Ala. 1989); Chavers v. NationalSecurity Fire Casualty Co., 405 So.2d 1, 5 (Ala. 1981);Calvert Fire Insurance Co. v. Green, 278 Ala. 673,180 So.2d 269 (1965). Thus, we affirm the summary judgments for the insurers as to Pate's claims based on negligence. However, inIndependent Fire Insurance Co. v. Lunsford, 621 So.2d 977 (Ala. 1993), this Court affirmed a judgment awarding damages for mental anguish based on a breach of a contract of insurance, thus implicitly modifying the rule stated in Vincent v. BlueCross-Blue Shield of Alabama, Inc., 373 So.2d 1054, 1056 (Ala. 1979) ("the law in this state does not permit recovery for personal injury, inconvenience, annoyance, or mental anguish and suffering in an action for breach of a contract of insurance") and similar cases.[3]
Furthermore, "[i]t is familiar law that a contract of insurance is essentially like all other contracts, and governed by general rules of contract." Hartford Fire InsuranceCo. v. Shapiro, 270 Ala. 149, 153, 117 So.2d 348, 352 (1960) (citations omitted); Farmers Merchants Bank v. Home InsuranceCo., 514 So.2d 825, 831 (Ala. 1987). The general rules of contract provide that "[d]amages should return the injured party to the position he would have been in had the contract been fully performed" and that "[t]hese damages are generally those that flow naturally from the breach." Garrett v. SunPlaza Development Co., 580 So.2d 1317, 1320 (Ala. 1991) (citations omitted).
Considering these rules of contract, along with this Court's recent decision in Lunsford, and given the special nature of credit disability insurance and the reasonable expectations of the parties to such a contract of insurance, we hold that the summary judgments for Roosevelt and Independent on Pate's contract claims were improper. As discussed more fully infra, there is substantial evidence supporting Pate's argument that the insurers breached their contracts and substantial evidence that Pate suffered consequential damages as a result.
Regarding Independent, Pate presented one of Independent's interrogatory answers — that its customary practice was to give the customers forms and rate information — together with the fact that Independent did not regularly receive forms from Pate, to argue that there is a reasonable inference that Independent did not send any forms. Pate also argues: "Independent set up conditions under which it would pay, but no one ever communicated those conditions to Pate until after he got sick. [Independent] claims it has a policy of insurance with Pate where these conditions appear. It never produced such a policy." Appellant's brief at 39. As evidence that Independent contributed to the delays in payment, Pate asserts *Page 346 
that Independent sent all but two payments to Rollison instead of Associates.
In support of its motion for summary judgment, Independent offered the affidavit of the claims examiner assigned to Pate's file. The examiner admits that Independent temporarily withheld some payments, but that it did so because of a medical report indicating that Pate was only partially disabled. Upon investigation, Independent discovered that another reporting physician had not seen Pate at all in 1986. Independent also contends that some of its payments were delayed because of late and sporadic medical reports, with some periods of several months between claims.
Although Pate does not dispute that Independent has paid into court the balance of the amount due plus interest, there are genuine issues of material fact, such as what conditions were required to activate the insurance and, if those conditions were met, whether Independent breached at least an implied contractual duty to pay Pate's installments in a timely fashion; those issues make the summary judgment on the contract claim improper. Furthermore, the trial court's denying Pate the opportunity to depose a representative of Independent was error.
In support of its motion for summary judgment, Roosevelt offered evidence that its practice with Pate was to send forms to Associates along with requests for Pate to complete and return them, and that it paid immediately when it received due proof of disability. Roosevelt attributes any delays to medical reports that indicated only a partial disability. Roosevelt paid all the accrued benefits due after independently confirming Pate's disability, and it has paid interest into the court.
Pate does not dispute that Roosevelt has paid the "cash portion" of the contract, but he argues that whether Roosevelt had good reasons not to pay, and whether, in light of evidence that Associates did not receive forms from Roosevelt, Roosevelt sent forms to be completed for proof of loss, were jury questions. Pate asserts that delays in payment and misdirection of forms caused late charges to be added to his account and eventually caused the repossession and resale of his equipment. The disputes regarding Roosevelt's handling of the claims and its payment procedure make the summary judgment as to the contract claim improper.[4]
 Conclusion
We reverse the summary judgment for the Rollison defendants on the fraud and conversion claims. We reverse the summary judgment for Associates on the fraud, conversion, negligence, and breach of contract claims, and remand those claims to the trial court with instructions to consider them in light ofWiley. We reverse the summary judgments for Independent and Roosevelt on the breach of contract claims. We affirm the trial court's judgments as to all other claims against the defendants.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Pate also substituted another insurer, Omaha Financial Life Insurance Company, for one of the fictitiously named defendants, but Omaha Financial Life Insurance Company was later dismissed and is not a party to this appeal.
[2] Pate also argues, for the first time on appeal, that he was a third-party beneficiary of a contract between Anderson and Rollison. We do not address this argument, because "issues not raised in the trial court may not later be raised on appeal."Campbell v. Alabama Power Co., 567 So.2d 1222, 1225 (Ala. 1990).
[3] See Lunsford, 621 So.2d at 980 (Maddox, J., writing specially) (noting that Lunsford changed the law regarding the recovery of damages for mental anguish in an action for breach of an insurance contract).
[4] Some of the correspondence in the record indicates that the other credit disability insurers apparently paid in a timely manner; at least, they are not parties to this appeal.