Larry and Cathy Campbell[1] filed an action against Alabama Power Company and others for damages and injuries sustained when Campbell came in contact with an electric power line. The complaint alleged that Alabama Power was negligent in the maintenance and location of a power supply line over a public road. This appeal is from a judgment based on a directed verdict in favor of Alabama Power.
At the time of the accident, Campbell was employed by Ray Nesmith, who was in the business of moving houses. Nesmith had been hired to move a house located within the Pell City city limits to a lot located outside the city limits. As part of the preparation for moving the house, "scoot" poles were attached to the roof of the house to allow overhead wires to slide over the roof as the house passed along the road. These scoot poles were pieces of lumber that ran from the roof peak down over the eaves of the house, forming an arch over the roof. To assist in crossing under traffic lights, telephone lines, and power lines, Campbell was positioned on top of the house with an extra scoot pole, gloves, and a hammer with a fiberglass-rubber handle. During the move, an electric power line came in contact with the roof of the house. Dale Campbell, Campbell's brother, climbed on top of the house to help remove the line and keep the neutral wire and the "hot" wire separate while Campbell maneuvered them off the roof. While Campbell was attempting to free the wires, he slipped down the roof and, to prevent a fall, grabbed both the neutral wire and the hot wire. He was knocked unconscious and his hands were severely burned, requiring amputation of both arms below the elbow.
Campbell argues several issues in his appeal to this Court: (1) that the trial court erred in granting Alabama Power's motion for a directed verdict based on a finding of contributory negligence as a matter law; (2) that this Court should judicially adopt a comparative negligence standard; and (3) that the trial court erred in failing to compel Alabama Power to produce an investigative report it had prepared, containing measurements of the house and height of the power lines as they existed on the day of the accident.
As to his first issue, Campbell contends that there was no evidence produced showing that he was not acting with due care, and he argues that both he and his brother were using the customary practices that house movers use in handling electric *Page 1224 
wires. He offers his brother's testimony in support of this argument:
"Q. Were you being careful in what you did?
"A. Yes, sir.
 "Q. Were you using the customary practice that house movers use in trying to keep those lines separated?
"A. Yes, sir."
He asserts that whether he was acting reasonably is a question of fact and, therefore, that the issue should have been submitted to the jury.
A review of the record reveals that Campbell was an experienced house mover and, by his own admission, had moved hundreds of houses during his work history. He, like his brother, was aware of the difference between insulated electric lines and uninsulated lines. Even though he had never come into contact with an uninsulated high voltage wire prior to this accident, it is clear that he was aware of their danger.
In Wilson v. Alabama Power Co., 495 So.2d 48 (Ala. 1986), a 15-year-old boy was severely injured when he came in contact with a 7,200-volt power line while climbing in a tree. This Court affirmed a holding that the boy was contributorily negligent as a matter of law because he was aware that the power line ran through the tree, appreciated the danger, and, despite this, elected to climb into the tree anyway. Similarly, in Watters v. Bucyrus-Erie Co., 537 So.2d 24 (Ala. 1989), plaintiff's decedent was found contributorily negligent as a matter of law because he was aware of a power line above his work area and understood the consequences of touching the power line with the crane boom he was operating, but nevertheless pulled the boom into contact with the line.
In this case, Dale Campbell testified that both he and his brother recognized the danger the wires posed:
 "Q. And all the thousands of houses that you say that you moved you, you recognize those as being high powered transmission lines, that is, had pretty high voltage on them?
"A. Yes, sir.
 "Q. And you looked at them, and you knew that, didn't you?
"A. Yes, sir.
 "Q. And when you saw them stuck up there, that house was stopped, wasn't it?
"A. Yes, sir.
". . . .
 "Q. While the house was stopped there, before Larry got in contact with those lines, did it ever occur to you to call the Power Company?
"A. No, sir.
"Q. Did Mr. Nesmith say anything about that?
"A. No, sir. Not that I recall.
"Q. Did Larry say anything about that?
"A. No, sir."
A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people can differ. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). To sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger, appreciated the danger, and had a conscious appreciation at the moment the incident occurred; mere heedlessness is insufficient. Central Alabama Electric Coop. v.Tapley, 546 So.2d 371, 381 (Ala. 1989) (citations omitted). Although Tapley also concerned an accident with an uninsulated electric line, the facts of that case are distinguishable from the present facts. In Tapley the electric lines in question had been erected just one week prior to the accident. There was no evidence presented to indicate that the decedent knew the wires were uninsulated or that he was aware of the height at which the power lines were strung or the height to which the truck bed could be raised.
Likewise, another recent case, Electric Service Co. ofMontgomery v. Dyess, 565 So.2d 244 (Ala. 1990), is also distinguishable. In that case, Dyess was working from a lift and was badly burned when he *Page 1225 
came in contact with a power line. Although Dyess was generally aware of the power line and of its danger to him, this Court affirmed a holding that he was not contributorily negligent as a matter of law, because there was evidence that he had relied on the electric service company to position the utility poles at the appropriate distance from the power line and was not aware of his proximity to the line before he contacted it. This Court affirmed because Dyess could not be said, as a matter of law, to have had a conscious appreciation of the danger posed by his proximity to the power lines at the time of the accident.
In contrast to the facts of those cases, in this case Campbell saw the power line and was fully aware of the danger that it posed to him. Campbell testified:
 "Q. And, I think when your lawyer was asking you, Mr. Alspaugh was asking you about high powered lines, you know what a high powered electric line looks like, don't you?
"A. Yes, sir.
 "Q. And, you have been working around electricity for many, many years?
"A. Yes, sir.
". . . .
 "Q. And in the house moving business down through the years, you have seen many of those uncovered lines across roads and so forth, haven't you?
"A. Yes, sir.
 "Q. And you know that those uncovered lines are high powered transmission lines?
"A. Yes, sir.
 "Q. And they have high voltage on those type lines?
"A. Yes, sir.
". . . .
 "Q. And you know, or anyone — we withdraw that. Those high powered, uncovered lines, you know if you come in contact with them that it would be dangerous?
"A. Yes, sir."
In spite of his awareness of the danger, Campbell elected to remain on the house and attempt to move the wires. Because he voluntarily placed himself in a position of danger, he can not defeat a contention that he was contributorily negligent by asserting that he merely grabbed the wires to prevent falling off the house. One who wrongfully and voluntarily puts himself in a position of danger cannot invoke the "sudden emergency" doctrine and thereby escape a charge of contributory negligence. Swindall v. Speigner, 283 Ala. 84, 214 So.2d 436
(1968).
Campbell next argues that this Court should judicially adopt a comparative negligence standard, and he cites, in support of that argument, the recent case of Alabama Electric Coop. v.Tapley, supra, fn. 8. He urges that this Court "refuse to continue to defer to the legislature for action and to now exercise its own inherent power." However, Campbell did not make this argument regarding comparative negligence before the trial court. It is well settled that issues not raised in the trial court may not later be raised on appeal. Green v. Taylor,437 So.2d 1259 (Ala. 1983).
Because of our holding that the trial court did not err in holding that Campbell was contributorily negligent as a matter of law, we pretermit consideration of Campbell's third issue, regarding production of Alabama Power's investigative report.
AFFIRMED.
MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur.
HORNSBY, C.J., and JONES and SHORES, JJ., dissent.
[1] Because Cathy Campbell's action for loss of consortium need not be addressed separately, we shall refer to "Campbell" as meaning Larry Campbell in both his capacity as injured party and his capacity as appellant.