CRAWLEY, Judge.
The appellee, Ira D. Pruitt, Jr., (the “plaintiff’), filed a complaint, alleging that he owned a half interest in the surface rights of three parcels of property containing approximately 246 acres and various interests in the mineral rights.[1] He alleged that the property could not be equitably divided or partitioned in kind; requested that the property be sold; requested that he be allowed to purchase the interest of the other co-tenants; requested that the court appoint an appraiser to determine the value of the interest of the other owners; and included a general prayer for relief. The complaint named Judy Cupps and Roger Cupps as defendants.
Because the Cupps defendants failed to answer within 30 days of being served, the plaintiff requested, and was granted, a default judgment.
Several days before obtaining the default judgment against the Cupps defendants, the plaintiff amended the complaint to add Elbert Pate and Shirley Pate as defendants, alleging that the Cuppses had sold their interest in the property to the Pates. The Pate defendants failed to answer within 30 days of being served; after reviewing the plaintiffs affidavit and his oral testimony, which is not in the record, the trial court entered a default judgment against the Pate defendants. In its order, the trial court found “that the property described in the complaint cannot be divided equitably in kind and must therefore be sold for the division of the proceeds of the sale.” The trial court also granted the plaintiffs offer to purchase the interest of the other owners, but denied the plaintiffs request to purchase for the sum of $40,000 and, instead, appointed a commissioner to appraise the property and make a report on the value of the property to the court within 30 days.
The plaintiffs affidavit filed in support of his motion for default judgment states:
“The property is undeveloped. It can only be reached by an unimproved easement across other lands which I own. Pri- or to the purchase of the property by the [Cuppses] from Billy Brewer, Billy Brewer cut the timber on the property. The land *1350 is extremely hilly and is irregularly shaped. It is divided by a number of creeks. In my opinion, it cannot be divided equally in kind.”
The default judgment against the Pate defendants and an order appointing a commissioner were entered on August 17,1995.
On August 18, 1995, defendant Roger Cupps moved to set aside the default judgment, alleging that he had conveyed his one-half interest to the Pate defendants in March 1995. Defendant Roger Cupps had acquired the one-half interest from defendant Judy Cupps in January 1995. Defendant Judy Cupps did not move to set aside the default judgment. Defendant Elbert Pate filed his answer on August 18, 1995. In his answer, defendant Elbert Pate admitted the material allegations of the complaint, except the allegation that the property could not be equitably divided or partitioned in kind, which he denied. Also on August 18,1995, defendants Elbert Pate and Shirley Pate filed (1) an offer to purchase plaintiffs interest for $40,-500, and a request that the court appoint a commissioner to appraise the property if the plaintiff faded to accept the defendants’ offer; (2) a counterclaim, alleging that the property could be equitably divided or partitioned in kind; invoking their right to purchase the plaintiffs interest and requesting that the court appoint a commissioner to appraise the property and determine its value; and including a general prayer for relief; and (3) a motion to set aside the default judgment, alleging (a) that their answer had been mailed to the court on August 14, 1995, and was filed on August 18,1995, and (b) that the plaintiff would not be prejudiced by setting aside the default judgment.
The commissioner filed a report on September 21, 1995, stating that the fair market value of the property was $128,940 or $525 per acre. The report does not show a certificate of service on any party. On September 29, 1995, the plaintiff paid one-half of the total value of the property into court. On October 26, 1995, the plaintiff filed a motion for approval of payment and authorization for the clerk to execute and deliver an instrument transferring title to the plaintiff. This motion shows a certificate of service on the defendants’ first attorney. On November 1, 1995, the defendants filed a response in opposition to the plaintiffs motion for approval of payment, alleging that they were not served a copy of the commissioner’s report and had no knowledge of the report until October 27, 1995, when they received the plaintiffs motion for approval of payment.
The trial court held a hearing on November 18, 1995, with counsel for all defendants and defendants Roger Cupps and Elbert Pate being present. At this hearing “the Court ... heard arguments of the defendants ... that such default judgment should be set aside.” The defendants filed no affidavit or other evidence in support of their response. The trial court, on December 20, 1995, conducted another hearing on the defendants’ motion to set aside the default judgments.[2] At this hearing, the defendants were represented by their second attorney. The defendants contended that they had not, even on that date, received a copy of the commissioner’s report and that they were therefore under no duty to pay into court sufficient money to purchase the plaintiffs interest in the property; that the trial court must set aside the default judgments in order for the defendants to have a right to purchase the plaintiffs interest in the jointly owned property; and that the value established by the commissioner’s report was inadequate.
According to the trial court’s order of December 28, 1995, it had appointed a commissioner to establish the fair market value of the property pursuant to § 35-6-101, Ala. Code 1975; it had considered the plaintiffs and the defendants’ offer to purchase the interest of the other party; the plaintiff had paid into the clerk of the court one-half of the appraised value of the property; the defendants had not paid any money into the clerk’s office to purchase the plaintiffs half interest; *1351 the court had conducted a hearing -on November 18, 1995, at which the defendants argued in opposition to the plaintiffs motion for approval of payment and argued that the judgment by default should be set aside; the defendants had obtained another attorney to represent them; and, at the defendants’ request, the court set a hearing for December 20, 1995, “thirty-two days subsequent to the November 18, 1995, hearing” to reconsider its ruling on the default judgments. The trial court denied the defendants’ motion to set aside the default judgments; held that the commissioner’s report had been timely filed and properly established the fair market value of the property; reconfirmed its earlier determination that the property could not be equitably partitioned; held that a copy of the commissioner’s report was available to the defendants during the November 18, 1995, hearing; and approved the plaintiffs payment and authorized the clerk to execute and deliver an instrument transferring title to the plaintiff.
Although it is unclear which parties appealed this ease, it is apparent that the brief is presented only on behalf of the Pate defendants. Therefore, we will not consider whether the trial court erred in failing to set aside the default judgment against the Cupps defendants or in any other ruling that might have been adverse to the Cupps defendants. This ease was transferred to this court by the Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6).

Standard of Review

“The applicable standard of review in appeals stemming from a trial court’s granting or denying a motion to set aside a default judgment is whether the trial court’s decision constituted an abuse of discretion.”
Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 603 (Ala.1988) (citations omitted).
“First, when exercising discretionary authority pursuant to Rule 55(c), a trial judge should start with the presumption that cases should be decided on the merits whenever practicable.” Kirtland, 524 So.2d at 604 (citation omitted).
“[A] trial court, in determining whether to grant or to deny a motion to set aside a default judgment, should exercise its broad discretionary powers with liberality and should balance the equities of the ease with a strong bias toward allowing the defendant to have his day in court.”
Id. at 605.
“Thus, we hold that a trial court’s broad discretionary authority under Rule 55(c) should not be exercised without considering the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant’s own culpable conduct.[3] [Ex parte] Illinois Central Gulf [R.R.], [514 So.2d 1283 (Ala.1987)]; Hritz v. Woma Corp., 732 F.2d 1178 (3d Cir.1984).”
Id. (footnote omitted).
Of the three factors set forth in Kirtland, we will discuss only the first factor, which is whether the defendants have a meritorious defense.
“The rationale behind the meritorious-defense requirement is that evidence of a defense indicates that the outcome of the case could be different if it were disposed of by a trial on the merits rather than by a default judgment and, therefore, justifies reopening the case so that justice can be done. If a trial on the merits would not change the outcome, the court would be wasting its and the parties’ resources in setting the default judgment aside. In such a case, the interest in attaining a ‘speedy1 and ‘inexpensive’ determination of the action outweighs the interest in securing a ‘just’ one. Rule 1(c), Ala.R.Civ.P. By *1352 making relief from a default judgment contingent upon a showing of a meritorious defense, we have, in effect, struck a balance between the countervailing interests of the judiciary’s need to enforce the rules of court and a litigant’s right to defend on the merits. Although the showing of a meritorious defense is a necessary and practical requirement, the quantum of evidence needed to show a meritorious defense has caused some controversy. For this reason, we now establish a standard that will be both workable and consistent with our policy objectives. The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means to warrant submission of the case to the jury.
“The allegations set forth in the answer and in the motion must be more than mere bare legal conclusions without factual support; they must counter the cause of action averred in the complaint with specificity—namely, by setting forth relevant legal grounds substantiated by a credible factual basis. Such allegations would constitute a ‘plausible defense.’ ”
Kirtland, 524 So.2d at 605-06 (emphasis added) (citations omitted).
In Kirtland, our supreme court clearly set forth the requirements for establishing a meritorious defense. According to the court, in addition to presenting a viable legal theory, the movant must support that theory with a factual basis. The only issue precluded by the default judgment was whether the land could be equitably partitioned. The defendants did not allege in their motions to set aside the default judgments that they had a meritorious defense to the plaintiffs action. Neither did the defendants present any evidence concerning this issue at their hearing before the trial court. Because the defendants failed to allege a meritorious defense and presented no evidence to establish a factual basis that the land could be equitably partitioned, they did not establish a meritorious defense. Therefore, the trial court did not err in denying the motion to set aside the default judgments.

Private or Public Sale

The defendants also contend that by denying their motion to set aside the default judgments, the trial court denied them their right to have the property sold at a public sale pursuant to § 35-6-20, Ala.Code 1975. The crux of this argument rests on the defendants’ contention that § 35-6-100, Ala. Code 1975, which allows a co-tenant to purchase the property of the other co-tenants through a mechanism for private sale, may only be invoked by a defendant to a partition action and only where the other co-tenant consents to a private sale. In addition, the defendants argue that the plaintiff failed to properly invoke the jurisdiction of the circuit court in this case because he did not file his complaint under § 35-6-20, Ala.Code 1974, but under § 35-6-100, Ala.Code 1975.
The fact that the plaintiffs complaint does not mention § 35-6-20 does not affect the jurisdiction of the trial court. Section 35-6-20 grants the circuit courts “original jurisdiction to divide or partition, or sell for partition.” In his complaint, the plaintiff stated that the land in question could “not be equitably divided or partitioned in kind and [that] it would be in the best interest of the parties to require that the premises be sold in lieu of partition.” He then invoked his right to purchase his co-tenant’s interest under § 35-6-100. Clearly, the complaint was intended to invoke the circuit court’s jurisdiction to sell the land for division.
Despite the defendants’ arguments otherwise, the plaintiff in a partition action does have the right to purchase his co-tenant’s interest under the provisions of § 35-6-100, Ala.Code 1975. Jolly v. Knopf, 463 So.2d 150 (Ala.1985)(holding § 35-6-100 unconstitutional to the extent that it prevented *1353 a plaintiff in a partition action from purchasing the subject property in a private sale for division). Although eases prior to Jolly held the statute constitutional despite its favoring the defendants in a partition action, the Jolly court deftly explained the difference between the case before it and the previously unsuccessful challenges to § 35-6-100, Ala.Code 1975. In the prior cases, the plaintiffs were complaining that the statute was unconstitutional because it “preferr[ed] the co-owner defendant’s right to purchase the plaintiffs interest over the plaintiffs right to insist upon a public sale.” Jolly, 463 So.2d at 152. In Jolly the plaintiff wanted to purchase her co-tenant’s interests at a private sale under the statute. The court pointed out that the purpose of § 35-6-100 was “to afford protection to co-owners against other co-owners seeking an involuntary sale of the co-owned land for pro-rata distribution of the proceeds of sale.” Id. at 153 (citing Madison v. Lambert, 399 So.2d 840, 843 (Ala.1981)). Since the statute allowed a procedure for co-owners to “negotiate among themselves for the sale or purchase of each of their respective interests,” the court held that the statute was unconstitutional to the extent that it discriminated against a co-tenant by denying that party the opportunity to purchase the land based on the alignment of that party as a plaintiff. Id. The effect of Jolly is essentially to institute a bidding war between the co-tenants who want to purchase the property, as the court recognized in its closing sentence of the opinion when it stated that the trial court should “allow each ... co-owner[ ] of the land a right to purchase the interest of the other[] at such price as the other[][is] willing to sell and the buyer is willing to pay.” Id. at 154. Accordingly, the plaintiff in this case could assert his right to purchase the defendants’ property.
The defendants also argue that they did not consent to the private sale, as § 35-6-100 requires. The statute does state that “the court shall provide for the purchase of the interests of the joint owners or tenants in common ... who agree to the sale.” § 35-6-100, Ala.Code 1975. However, the record discloses that the defendants did at least consent to a private sale. They filed with the court a counterclaim, in which they too invoked their right to purchase the plaintiffs portion of the property under § 35-6-100. Although this pleading was untimely, we note that in the record of the December 20 hearing, the plaintiff's attorney indicates that the defendants offered to purchase under the statute. The defendants’ counsel does not argue with this statement. The trial court then states:
“As I understand the statute the intent is to make sure it’s not placed for sale. That gives both parties an opportunity to do that.... Give your clients ten days to put the same amount in if they are sincere about purchasing it. And then we can sit down and I will sit down and let the two parties bid. And whoever outbids can purchase it.”
After more arguments by both counsel, the defendants’ attorney states: “If they’re allowed the ten days to pay this amount into court, they will try to do so. They would much prefer a public sale.” The trial court responded: “I don’t think the statute calls— Tell your clients it’s not for public sale.”
Although the trial court denied the defendants’ motion to set the default judgments aside, the trial court did consider the merits of whether the plaintiff or defendants should be allowed to purchase the property, because it discussed the failure of the defendants to deposit with the clerk of the court sufficient moneys to pay for the plaintiffs half interest in the property. The trial court noted that more than 30 days had expired between the hearing it conducted on November 18, 1995, and the one it conducted on December 20, 1995, yet the defendants had not deposited any moneys with the clerk pursuant to § 35-6-102, Ala.Code 1975. Section 35-6-103, Ala.Code 1975, allows the court to proceed according to its traditional practices should a joint owner or tenant in common fail to pay into the court the price set in the commissioner’s report.
At the December hearing, the defendants continued to complain that they had not received a copy of the commissioner’s report until that day. In their response in opposition to the plaintiffs motion for approval of payment filed by the defendants on *1354 November 1, 1995, the defendants acknowledge notice of the commissioner’s report. The defendants also had knowledge of the commissioner’s report at the hearing on November 18, 1995. Despite this notice, the defendants do not explain why they did not obtain a copy of the commissioner’s report from the clerk’s office on or before the December 20 hearing. Neither have the defendants explained why they failed to pay into the court the price set for the value of the plaintiffs interest. By failing to pay the moneys into court within 30 days of the commissioner’s report, or at least by the date of the December hearing, they waived their rights under these Code sections. Lynum v. Lynum, 521 So.2d 6 (Ala.1987); Guilford v. Bell, 637 So.2d 1364 (Ala.Civ.App.1994).
“A trial court, under its broad powers, can order a sale of property for division of the proceeds among the joint owners either at public auction or at private sale.” Irons v. LeSueur, 487 So.2d 1352, 1358 (Ala.1986) (citing Copeland v. Giles, 271 Ala. 302, 123 So.2d 147 (1960)). Further, during the December hearing, the defendants stated that if the court would allow them 10 days to pay the amount into the court, “they will try to do so”; however, counsel noted, “They would much prefer a public sale.” The defendants failed to make use of the ample opportunities to purchase the property afforded them by the trial court. They also are incorrect in arguing that they had a right to a public sale despite their co-tenant’s invocation of § 35-6-100, Ala.Code 1975. Accordingly, the trial court did not err when it refused to set aside the default judgment. Even if the trial court had erred, the error would have been harmless, because, as discussed above, the trial court considered the defendants’ rights to purchase the plaintiffs interest at a private sale or to sell the property at a public sale. See Rule 45, A.R.App.P.

Value of Property

The defendants’ final contention is that the price established by the commissioner’s report of $128,940 or $525 per acre was inadequate. During the December hearing, the defendants referred to a letter from an appraiser who had taken “a preliminary review of the property” at $775 per acre or $196,650. However, the letter was never received into evidence, nor is there any indication that the trial court reviewed the letter. The letter is not included in the record. There is no explanation of what was meant by “a preliminary review of the property.” The appraiser’s qualifications were not proven. In entering the default judgment, the trial court wisely denied the plaintiffs request to purchase the defendants’ interest in the property for $40,000, but, instead, appointed a commissioner to appraise the property and report its value to the court.
The commissioner’s report was the only evidence before the trial court as to the fair market value; thus, the defendants failed to prove that the price established by the commissioner’s report was inadequate.

Conclusion

Because the defendants failed to establish a meritorious defense to the plaintiffs claim that the land could not be equitably divided, the trial court properly denied the motions to set aside the default judgment. In addition, the defendants failed to prove that the plaintiff was not entitled to purchase the property at a private sale under § 35-6-100, Ala.Code 1975, or that the value of the property established in the commissioner’s report was inadequate. Therefore, the trial court did not abuse its discretion in approving the sale of the defendants’ half interest to the plaintiff at the amount set forth in the commissioner’s report.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur in the result.

. Although the plaintiff owned a one-half interest in the surface rights, his exact percentage of ownership in the mineral rights is not clear, but was treated by the parties and the court as being 50%.

. Although it appears that the Cupps defendants had conveyed their interest in the property before default judgments were entered against them, the second attorney represented to the court in the December hearing that he represented the Cupps defendants, and that they had an equitable interest in the property, but gave no explanation for this theory.

. The Pate defendants had been served on July 14, 1995, and, thus, they could have avoided a default by filing their answer on August 14, 1995, rather than mailing it on August 14, 1995. It was filed on August 18, 1995 — the day after the default judgment was entered. We make no conclusions concerning whether this would constitute culpable conduct, but we do note that the trial court could have considered this in its analysis.