764 So.2d 549 (1999)
Jerry Wayne JAMES
v.
Sonja Maria JAMES.
2970720.
Court of Civil Appeals of Alabama.
March 5, 1999.
Petitions for Rehearing Denied April 30, 1999.
Certiorari Petition Denied August 20, 1999.
*551 Thomas E. Baddley of Baddley & Mauro, L.L.C., Birmingham; Steve A. Baccus of Almon, McAllister, Baccus & Hall, Tuscumbia; and Andrew P. Campbell and Elizabeth B. Anthony of Campbell, Waller & McCallum, Birmingham, for appellant.
John D. Clement, Jr., Tuscumbia, for appellee.
Appellant's Certiorari Petition Denied August 20, 1999.
Alabama Supreme Court 1981317.
PER CURIAM.
In May 1996, Sonja Maria James sued Jerry Wayne James for a divorce, alleging physical cruelty and requesting periodic alimony, a division of property, and payment of attorney fees. The husband answered and counterclaimed for a divorce, requesting that the trial court enforce an antenuptial agreement. The trial court concluded that the antenuptial agreement had been rescinded by a subsequent agreement and ordered that all the noncash property of the parties be sold at a private sale or public auction, and that the wife receive one-third of the proceeds and the husband receive two-thirds of the proceeds. The trial court also ordered that the cash property, including retirement accounts, be divided one-third to the wife and two-thirds to the husband. The trial court awarded the wife $100,000 as an attorney fee, to be paid from the husband's share of the proceeds from the sale. The husband appeals.

I. Antenuptial Agreement
The husband first argues that the trial court erred by concluding that the antenuptial agreement had been rescinded. The parties entered into an antenuptial agreement in 1984. In 1987, the parties signed a "Rescission Agreement," which was notarized. The rescission agreement provided:
"Comes now the undersigned and executes this Rescission Agreement, for and in consideration of their mutual covenants and agreements and do hereby contract and agree as follows:
"1. Both parties do hereby rescind and cancel all their rights and interests growing out of that certain Antenuptial Agreement entered into by them on November 5, 1984.
"2. The Parties do hereby waive any claim or right that they may have under said Agreement in exchange for the resumption of normal marital relations between the parties.
"3. The Parties further agree that henceforth their respective rights, liabilities and obligations shall be determined as man and wife irrespective of any provisions contained in said Antenuptial Agreement."
The husband alternatively argues that the rescission agreement should be interpreted as providing the wife with an interest in only that property he has acquired since the date of the rescission agreement. In other words, the husband argues that the antenuptial agreement controls the disposition of the husband's property up to the date of the execution of the rescission agreement. The husband argues that the language in the rescission agreement, "henceforth their respective rights, liabilities, and obligations shall be determined as man and wife irrespective of any provisions contained in said Antenuptial Agreement" (emphasis added), supports this interpretation. The husband contends that *552 "henceforth" indicates the parties intended not to enforce the antenuptial agreement beginning on the date of the execution of the rescission agreement but to enforce the antenuptial agreement up to the date of the rescission agreement. We disagree.
The rescission agreement clearly states in paragraph 1: "Both parties do hereby rescind and cancel all their rights and interests growing out of that certain Antenuptial Agreement entered into by them on November 5, 1984." (Emphasis added.) We conclude that the language emphasized above clearly states an intention to unequivocally and unconditionally cancel the antenuptial agreement. The word "henceforth" used later in the rescission agreement merely states the obviousonce the parties had entered into the rescission agreement, the antenuptial agreement would not govern the disposition of the parties' marital property.

II. Grounds for Divorce
The husband next argues that the trial court erred by basing the divorce on the ground of the husband's physical cruelty to the wife. Ala.Code 1975, § 30-2-1(a)(11), provides that a trial court may grant a divorce:
"In favor of either party to the marriage when the other has committed actual violence on his or her person, attended with danger to life or health, or when from his or her conduct there is reasonable apprehension of such violence."
The wife testified that the husband had physically threatened her several times and had actually beaten her several times. The husband admitted that he had slapped the wife "two, three, or four" times. The wife also testified that the husband had attacked her when he was drunk and that she had gone to an emergency room for treatment of her injuries. We conclude that the trial court had evidence before it to justify a finding of physical cruelty on the part of the husband toward the wife.

III. Division of Separately Owned Property
The husband next argues that the trial court erred by awarding the wife a portion of what he alleges is his separately owned property. Ala.Code 1975, § 30-2-51(a), provides:
"[T]he judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the trial judge finds from the evidence that such property, or income produced by such property, has been used regularly for the common benefit of the parties during their marriage."
The question whether an asset is marital property or separate property is a question of fact; the trial court's determination on that issue is presumed correct, and its judgment based on that determination will not be reversed unless the trial court abused its discretion. Wolf v. Wolf, 666 So.2d 17 (Ala.Civ.App.1995).
The husband argues that the trial court improperly awarded the wife an interest in his separate property. The husband contends that the companies he started before the marriage are his separate property; however, the wife testified that money from those companies was regularly used for the benefit of the marriage and that the husband even transferred assets from various business interests to be held in her name. The trial court did not abuse its discretion by finding these properties to be marital property.
The husband argues that the trial court erred by awarding the wife one-third of the amount in his retirement account. Ala.Code 1975, § 30-2-51, states:
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or *553 may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
"(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
The husband testified that he has over $300,000 in an individual retirement account ("IRA") that he had accumulated before the marriage. The wife did not dispute the husband's testimony that the entire IRA balance was accumulated before the marriage. Therefore, the trial court erred by awarding the wife any interest in the IRA. Section 30-2-51(b)(2).

IV. Liquidation of Real and Personal Property
The husband next argues that the trial court abused its discretion by ordering that all the noncash marital property, both real and personal, to be sold at a private sale or at public auction. The court further ordered that two-thirds of the proceeds from the sale be distributed to the husband and one-third to the wife, and the husband argues that this is an inequitable property division.
When the court hears ore tenus evidence in a divorce case, the court's judgment based on that evidence is presumed correct, and this court will not reverse absent a finding that the judgment is plainly and palpably wrong or unjust. Brannon v. Brannon, 477 So.2d 445 (Ala. Civ.App.1985). The issue of the division of property is within the discretion of the trial court. Id. Absent a showing of an abuse of discretion, we will not reverse the trial court's judgment regarding this issue. Id. The factors the trial court considers in making a property division include each spouse's earning ability, age, health, and conduct, and the length of the marriage. Welch v. Welch, 636 So.2d 464, 466 (Ala. Civ.App.1994). A property division does not have to be equal to be equitable. Sketo v. Sketo, 608 So.2d 759, 760 (Ala.Civ. App.1992).
The trial court's judgment states in pertinent part:
"1. The Court finds that the only issue in this case is money.
". . . .
"6. The Court ... has considered the standard of living of the parties, their income, their personal and real property that they presently own, and many other factors in making a determination as to how to divide the personal and real property. Some of the factors that the Court has considered are:
"1. the duration of the marriage;
"2. the earning ability of the parties;
"3 .... and age of the parties;
"4. health of the parties;
"5. future outlook and prospect of the parties;
"6. real and personal property owned by the parties;
"7. station of life of each party;
"8. the status of each party as it existed from the date of the marriage until now;
"9. the overall circumstances of the marriage of the parties;
"10. and the conduct of the parties with reference to the cause of the divorce.
"7. The Court further finds that the properties owned by the parties consist of money, personal property, stocks in corporations, and real estate.
"8. The Court further finds that there is a wide diversity of opinion as to the value of the properties referred to *554 above, and this Court does not put much reliance on the expert opinion of the witnesses concerning the value of the stock in the corporation;
"9. The Court further finds that the best way in which to determine the value of any properties is by a public auction, and this is what the Court intends to do in this case: to sell all properties and convert it to cash. Cash is the easiest thing to divide.
". . . .
"It is further ORDERED, ADJUDGED, AND DECREED by the Court that all properties consisting of stock, corporations, land, personal property and anything other than cash shall be sold by private sale or public auction."
The trial court's order of a sale of all noncash property includes the personal effects of the parties, i.e., clothes, furniture, and other personal belongings. We conclude that the trial court abused its discretion by ordering that the personal effects be sold. Personal property can have more sentimental value than market value, and ordering the parties to convert all such property to cash would serve only a punitive purpose. Therefore, we instruct the trial court on remand to divide the parties' personal effects equitably.
The husband contends that the award to the wife of one-third of the marital estate is inequitable. We disagree. The husband and the wife were married for 14 years, and the wife testified that she worked in one of the husband's companies during their marriage. As stated earlier, the trial court based the divorce on the husband's physical cruelty to the wife, and the trial court was within its discretion to consider the husband's conduct in dividing the marital property.
The husband complains particularly about the effect the trial court's order for a private sale or a sale at public auction would have on his interests in three closely held corporations. He owns 57% of the stock in Franklin Homes, Inc., and a 100% interest in Indies House, Inc., and PullEm's, Inc. The husband and the wife each presented the testimony of an expert witness as to the value of the husband's interests in these three corporations. Both witnesses testified that no ready market exists for these corporations, and, that as a result, a liquidation of these corporations would result in a sale price significantly below the actual value of these corporations. Evidence indicated that the liquidation of these corporations would also result in considerable tax liabilities for the husband.
Although the trial court's order of a public auction or a private sale is unusual and could have adverse economic consequences for the husband, the trial court did not abuse its discretion by ordering the auction or sale. The parties can agree upon a public auction or a private sale, depending on which is more economically advantageous to them. Also, the trial court's order does not prohibit the husband from placing his own bid at the sale, and, in effect, buying out the wife's one-third interest in these corporations just as a party in a sale-for-division action can purchase the other parties' interests in the property. Ala.Code 1975, § 35-6-100; Jolly v. Knopf, 463 So.2d 150 (Ala.1985); and Cupps v. Pruitt, 694 So.2d 1346 (Ala. Civ.App.1996). In her brief to this court, the wife does not indicate any desire to own any of these corporations; rather, she merely wants a cash settlement to compensate her for her interests in these assets. Considering the husband's evidence indicating that there is no available market for the corporations, he has a high likelihood of being the high bidder at the sale or auction. In that event, the husband can maintain his control of the corporations and the wife can receive a cash settlement for her interests.

V. Attorney Fees
Last, the husband argues that the trial court erred in awarding the wife a $100,000 attorney fee. The amount of attorney *555 fees to be awarded is a matter within the discretion of the trial court. That discretion, however, is "judicial, not arbitrary[,] and is subject to review on appeal." Williams v. Williams, 411 So.2d 154, 155 (Ala.Civ.App.1982).
"In arriving at the value of legal services performed in a divorce action, the trial court may properly consider the following: (1) the nature and value of the subject matter of employment; (2) the learning, skill, and labor necessary to the proper discharge of that employment; (3) the time consumed on the matter in dispute; (4) the professional ability, experience, and reputation of the attorney performing the services; (5) the weight of his responsibility; (6) the measure of success achieved; (7) any reasonable expenses incurred in the representation of a client; and (8) the fee customarily charged in the locality for similar services. Moreover, the trial court in determining a reasonable attorney's fee may rely on opinion evidence of experts on the subject of fees, and on its own knowledge and experience as to the value of the services performed. Likewise, the earning capacity of the parties and the financial circumstances of the husband may also be considered in establishing the amount of money to which an attorney is entitled for his services."
Lochridge v. Lochridge, 448 So.2d 378, 380-81 (Ala.Civ.App.1984) (citations omitted).
The wife's attorney testified that he devoted 875 hours to the case. He testified that 875 was only an estimate and that he kept no time records. The litigation in this case was neither protracted nor especially contentious. See Brasfield v. Brasfield, 679 So.2d 1091 (Ala.Civ.App. 1996). Therefore, we conclude that the award was excessive and that in making the award the trial court abused its discretion.
In his dissent, Judge Robertson asserts that, because the husband did not in a post-judgment motion allege error in the award of the attorney fee, he is precluded from raising the issue on appeal. That assertion is misplaced and is contrary to the present state of the law. Rule 4(a)(3), Ala. R.App.P.; McGough v. Slaughter, 395 So.2d 972 (Ala.1981); Smither v. International Paper Co., 540 So.2d 760 (Ala.Civ.App.1989).

VI. Conclusion
We affirm that portion of the trial court's judgment holding that the antenuptial agreement had been rescinded and basing the divorce on the ground of the husband's physical cruelty. We affirm that part of the trial court's judgment ordering the sale of all noncash marital property, except that portion of the judgment ordering the sale of the parties' personal effects, which portion we reverse. We also reverse that portion of the trial court's judgment treating the husband's retirement account as marital property and awarding the wife a one-third interest in the balance in that account, and we reverse the trial court's award of $100,000 as an attorney fee for the wife.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES and MONROE, JJ., concur.
THOMPSON, J., concurs in the result.
ROBERTSON, P.J., and CRAWLEY, J., concur in part and dissent in part.
ROBERTSON, Presiding Judge, concurring in part and dissenting in part.
I concur with the affirmance in part; however, I must respectfully dissent as to the reversal in part. While I concur with Judge Crawley's dissent in part, I write further to point out why, in my opinion, the per curiam opinion is partly in error, especially in regard to the attorney fee. The trial court's judgment contained the following language:

*556 "It is further ORDERED, ADJUDGED AND DECREED by the court that after the sale of the properties referred to herein, and the cost of said sales is to be paid from the proceeds and after the payment of the same and all indebtedness owed on the same, the attorney, John D. Clement, Jr. shall be paid $100,000.00 for his attorney's fee.
"It is further ORDERED, ADJUDGED AND DECREED by the court that all remaining monies which shall consist of any savings accounts, retirement accounts, IRA's or otherwise, one-third (1/3) of the same shall be paid to Sonja M. James for a full and complete settlement of all claims by her against Jerry James, which shall include all past, present or future alimony."
By ordering the attorney fee to be paid from the common fund before a one-third/ two-thirds division between the parties, the trial court, in effect, required the husband to pay two-thirds, or $66,666.67, of the attorney fee and the wife to pay one-third, $33,333.33.
The facts in this case reflect that the marital assets involved in the trial court's consideration exceeded $5,000,000. The husband's taxable income in 1995 was $1,295,036. The assets consisted of a complicated variety of interests in real estate, stock, and personal property, as well as various investment accounts and profit-sharing plans. The husband appeared to be unable to exactly specify the extent of the marital estate or the value of some of the assets. The record supports the conclusion that the husband resisted discovery and went to considerable effort to avoid disclosure of the extent of his assets. The record shows many hours reasonably expended by the wife's attorney in the preparation and litigation of this case. It was necessary for the wife's attorney to employ experts to determine the approximate value of the marital estate. These and other expenses exceeded $20,000. See Hart v. Jackson, 607 So.2d 161 (Ala.1992). Also, future efforts and services will be required of the attorney in the sale of the marital assets and in protecting the common fund. See Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala. 1985).
More importantly, I believe the per curiam opinion errs in addressing this issue because this "matter [was] not presented to the trial court [and because] ... the trial court had no opportunity to [address the amount of attorney fee awarded in its judgment]" by way of a post-trial motion. Rule 4, Ala.R.App.P., Committee Comments.
The record reflects that during the trial of the case, the husband failed to object to an award of attorney fees against him. "The fees awarded [were] supported by the attorney's testimony, to which [the] husband did not object or offer evidence to refute at trial." (Appellee's Brief, p. 32) After the trial court entered its judgment, the husband failed to challenge the amount of the award in a post-judgment motion. The trial court was never given the opportunity to address this issue at the trial level. In fact, the husband failed to file a post-judgment motion as to any issue. The husband's argument challenging the amount of the attorney fee is raised for the first time on appeal.
A long-settled principle governing appellate review is that an appellate court will not review an alleged error by the trial court when it has not been first presented to the trial court. Both this court and our Supreme Court have applied this settled principle to reject arguments that challenged an award of attorney fees that were raised for the first time on appeal. See Gotlieb v. Collat, 567 So.2d 1302 (Ala. 1990); Rhyne v. Rhyne, 564 So.2d 966 (Ala.Civ.App.1989).
Rule 4(a)(3), Ala.R.App.P., provides: "Any error or ground of reversal or modification of a judgment or order which was asserted in the trial court may be asserted on appeal without regard to whether such error or ground has been raised by motion *557 in the trial court under Rule 52(b) or Rule 59 of the ARCP." (Emphasis added). However, "matters which can only be raised by post-trial motion must be so asserted." Rule 4, Ala.R.App.P., Committee Comments. An alleged abuse of discretion in the amount of an attorney fee awarded by the trial court on unrefuted testimony in a judgment for divorce can only be raised by a post-trial motion.
This principle should be strictly adhered to by our appellate courts. No judgment, at least in civil matters, should be reversed without the trial court first having the issue presented to it during the trial or without having an alleged error or alleged abuse of discretion presented to it by way of a post-judgment motion after the entry of judgment. This improves judicial economy and prevents the appellate courts from becoming "second" trial courts.
"We do not hear arguments presented for the first time on appeal." Bullard v. Creative Leasing, Inc., 624 So.2d 199, 201 (Ala.Civ.App.1993). See also West Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993); Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala. 1992); and Campbell v. Alabama Power Co., 567 So.2d 1222 (Ala.1990).
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur in the per curiam opinion, except as to Part V, which reverses the trial court's award of a $100,000 attorney fee. As to Part V, I dissent.
"It is within the sound discretion of the trial court to award an attorney's fee in a divorce case. It is not error for a trial court to allow and set an amount for attorney fees even where no proof is presented regarding the reasonableness of the amount. Coan v. Coan, 516 So.2d 683 (Ala.Civ.App.1987). There is a presumption that the `trial court has the knowledge from which it may determine the amount of a reasonable fee for an attorney, even though no evidence is presented as to its reasonableness.' Coan at 685."
Boykin v. Boykin, 628 So.2d 949, 952 (Ala. Civ.App.1993).
The wife's attorney testified that he had spent approximately 875 hours on this case over a two-year period. He testified that his hourly rate is $125. He further testified that he does not maintain time records. He testified as to the type of work he performed in representing the wife, such as drafting legal documents, responding to discovery requests, seeking discovery from the husband and from nonparties, preparing for and conducting depositions, researching legal issues, and participating in the trial of the case.
The husband argues that the attorney fee awarded is unreasonable, and, because the wife's attorney did not maintain time records, that the wife's attorney-fee award is really a contingency fee, which is not allowed for divorce cases, see Rule 1.5(d)(1), Ala. R. Prof. Conduct. I disagree. The wife's attorney did present evidence of the work he did in this case. Although it would be a better practice to maintain time records in a divorce case, the failure to do so is not evidence per se of a contingency fee arrangement. I find no abuse of discretion in the court's awarding $100,000 as a fee for the wife's attorney.