Rel: March 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0347

_____

### William Morin

### v.

### Karry Morin

### Appeal from Cullman Circuit Court
### (DR-20-900149)

FRIDY, Judge.

William Morin ("the husband") appeals from a judgment entered by the Cullman Circuit Court ("the trial court") divorcing him from Karry Morin ("the wife") to the extent that the judgment divides the marital

property and awards their son, Spencer Cameron-Morin ("the son"), $10,000 for unjust enrichment. We affirm the judgment.

Background

The husband and the wife originally married in 1987. After divorcing in November 2011, they remarried on June 1, 2012. In 2009, during their first marriage, the husband and the wife purchased an 8.7-acre parcel of property ("the property") in Cullman County. In 2010, they installed a manufactured home on the property, which they used as their residence. Upon their first divorce in 2011, the wife was to receive the property, but the title to the property remained vested in both the husband and the wife as joint owners with the right of survivorship. After remarrying in 2012, the husband and the wife resided together in the marital residence, until they separated in April 2020. Following the parties' separation, the husband continued to reside in the marital residence. The wife's former daughter-in-law was also residing on the property in a separate manufactured home; the son was also living in a 700-square-foot modular "cabin" on the property.

On May 6, 2020, the wife commenced the underlying action by filing a complaint seeking a divorce from the husband. On June 1, 2020, the

husband filed an answer and a counterclaim for a divorce; the wife filed a reply to the counterclaim on June 5, 2020. The pleadings indicated that four children were born of the husband and the wife's first marriage and that all four were over the age of majority. On March 3, 2021, the son filed a motion to intervene, which the trial court later granted without objection. In his complaint in intervention, the son alleged that the husband and the wife had allowed him to construct the cabin on the property, that he used that cabin as his personal residence, and that the husband and the wife would be unjustly enriched if the cabin was treated as their marital property. On May 1, 2023, the wife filed a motion requesting that she be awarded the exclusive use and possession of the marital residence; that motion was scheduled to be heard during the trial of the case.

On October 20, 2023, the trial court conducted a bench trial. On January 1, 2024, the trial court entered a final judgment that divorced the husband and the wife on the ground of incompatibility of temperament and divided the real and personal property; the judgment did not award either the husband or the wife alimony. Regarding the

3

marital residence, the judgment ordered that the marital residence was to be sold according to the following terms:

"The [husband and the wife] shall agree upon a licensed realtor to list and conduct the sale of the [marital residence]. In the event that agreement cannot be had, then each party shall choose a realtor[,] and these two realtors shall select a third impartial realtor to list and sell the [marital residence]. Neither [the husband nor the wife] shall refuse a reasonable offer of sale.

"The [marital residence] shall remain continuously listed for sale, but in the event that the same is not sold within one year from the date of the listing, either party may petition the Court for public sale of the [marital residence].

"[The husband] shall be responsible for upkeep and expense for the marital [residence] until the same is sold.

"Proceeds from the eventual sale of the [marital residence] shall be divided/distributed as follows:

"A. All costs of sale shall be first paid.

"B. Any outstanding valid mortgage or other lien, if any there be, shall be paid in full.

"C. [The wife] shall thereafter receive the sum of $51,050.00 as reimbursement for her living expenses and rental value [of the marital residence] during the parties' separation when [the husband] had the use of the marital [residence].

"D. All remaining proceeds shall be equally divided between the [husband and the wife]."

4

The trial court also addressed the son's unjust-enrichment claim as follows:

> "The claim of [the son] to an interest in the marital [residence] is recognized by the Court to be in part a valid equitable claim. As partial performance negates application of the [S]tatu[t]e of [F]rauds, [the son] shall be allowed 60 days to remove his modular home from the ... property and [the husband] shall pay the sum of $10,000.00 to [the son] within 60 days of the [marital residence] being marketed for sale for costs of such removal and for loss of improvements made."

On February 8, 2024, the husband filed a postjudgment motion to alter, amend, or vacate the divorce judgment. The trial court denied the motion on April 3, 2024. On May 4, 2024, the husband timely filed a notice of appeal, naming the wife as the sole appellee.

## The Issues

The husband contends that the trial court erred by ordering him and the wife to sell the marital residence and by awarding the wife $51,050 from the proceeds derived from the sale of the marital residence to compensate her for her "living expenses and rental value [of the marital residence] during the parties' separation when the [husband] had the use of the marital [residence]." The husband also contends that the trial court erred by allowing the son to intervene in the divorce action

5

and by imposing a personal judgment in the amount of $10,000 in favor of the son and against the husband. We cannot consider the last issue, however. The husband did not identify the son as an appellee on his notice of appeal, as required by Rule 3(c), Ala. R. App. P., and thereby waived any right to appeal the judgment entered against him and in favor of the son. See Alabama Plating Tech., LLC v. Georgia Plating Tech., LLC, [Ms. SC-2023-0250, June 21, 2024] ___ So. 3d ___ (Ala. 2024).

## Standard of Review

When a trial court fashions a property-division award following the presentation of ore tenus evidence, its judgment based on that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Stone v. Stone, 26 So. 3d 1232, 1236 (Ala. Civ. App. 2009).

## The Evidence

The husband and the wife were married and subsequently raised four children, in Flint, Michigan, until 2006, when the wife and the children moved to Huntsville. The husband soon followed the wife and the children to Huntsville, and, in 2009, the husband and the wife jointly

purchased the property. According to the wife, she and the husband promised to give two acres of the property to each of their four children and to reside on the remaining acreage. After purchasing the property, the husband and the wife built a shed on the property, and, in 2010, they purchased a 1998 manufactured home, which they installed on the property and used as their residence. When they divorced for the first time in 2011, the husband and the wife agreed that the husband would quitclaim his interest in the marital residence to the wife, who would then be entitled to full ownership; however, the husband did not execute the quitclaim deed. After they reconciled and remarried in 2012, the husband and the wife refinanced the mortgage on the marital residence; in 2016, the husband used $82,000 of his inheritance from his mother to pay the mortgage balance. The marital residence was not encumbered with any debt after 2016.

The husband and the wife separated in February 2020. They disputed the cause of their separation; the wife accused the husband of terroristic threats and harassment, and the husband accused the wife of emotionally abandoning him and acting abusively. Both called family members as witnesses to support their claims. The wife testified that,

after she and the husband separated, she temporarily stayed in a small travel trailer on the property and then briefly moved into the cabin with the son. According to the wife and the son, the husband periodically cut off the utilities to the trailer and the cabin, so, they said, the son decided to buy another house, which he and the wife moved into. The husband denied any harassing conduct. The son testified that the mortgage on his new house was $1,800 per month. According to the wife and the son, the wife paid the son various payments equating to $900 per month between May 2020 and November 2022, at which time, the son moved out and the wife began paying $1,800 per month to cover the mortgage payments. The son testified that he considered the payments made by the wife to be rental payments; he also said that he did not agree to give the wife any equity in the house. The wife testified that she paid a total of $51,050 to the son for rent between May 2020 and the time of trial, and she submitted an exhibit itemizing the payments.

The husband testified that, when he and the wife divorced in 2011, he moved to Huntsville. After a few months, the wife requested that they reconcile, and he agreed. According to the husband, he told the wife that, if they ever separated again, he would be the one to stay in the marital

8

residence and that she would have to leave. When the husband and the wife separated in 2020, the husband remained in the marital residence. He testified that he wanted to remain in the marital residence. The husband and the wife disputed whether either of them had offered to purchase the interest of the other in the marital residence, but some evidence indicated that they had both made an offer that the other had declined.

The wife testified that she wanted the trial court to order the sale of the marital residence and for the husband to reimburse her, from the proceeds of the sale, the $51,050 that she had paid to the son, with her and the husband splitting the remaining proceeds after closing costs. The husband had the property appraised in 2020 for $115,000, but he testified that, by the time of trial, it was worth $140,000 to $150,000, including the manufactured home, but excluding the former daughter-in-law's mobile home and the son's cabin. The wife stated that, because of the husband's behavior in driving her and the son off the property, she would not consent to the husband's staying in the marital residence and purchasing her equitable interest. The husband testified that he wanted to keep the marital residence because he had purchased it with his

inheritance and because he wanted his former daughter-in-law and her child to be able to keep living on the property. He also testified that his other grandchildren enjoyed playing on the property. The husband testified that the wife had always denigrated the property and hated living there.

## Analysis

The division of marital property in a divorce need not be equal, but it must be equitable. Daugherty v. Daugherty, 579 So. 2d 1377 (Ala. Civ. App. 1991). "The purpose of a property settlement in a divorce action is to give 'each spouse the value of [his or her] interest in the marriage.'" Spuhl v. Spuhl, 120 So. 3d 1071, 1075 (Ala. Civ. App. 2013) (quoting Pattillo v. Pattillo, 414 So. 2d 915, 917 (Ala. 1982)). In determining such an equitable division, "the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties' marriage; and the source, value, and type of marital property." Stone v. Stone, 26 So. 3d 1232, 1236 (Ala. Civ. App. 2009). The husband argues that the trial court disregarded the traditional factors relating to the division of property and, instead, ordered the sale of the marital residence to punish the

10

husband, in violation of <u>James v. James</u>, 764 So. 2d 549, 554 (Ala. Civ. App. 1999), rev'd in part on other grounds by <u>Ex parte James</u>, 764 So. 2d 557 (Ala. 1999).

In <u>James</u>, the Colbert Circuit Court entered a divorce judgment requiring that all the noncash property of the spouses Jerry James and Sonja James be sold at a private sale or public auction, that Sonja receive one-third of the proceeds derived from the sale or auction, and that Jerry receive the remaining two-thirds. Jerry appealed and argued that the circuit court had abused its discretion by ordering a forced sale of all the marital property. Regarding the personal property, this court agreed, stating: "Personal property can have more sentimental value than market value, and ordering the parties to convert all such property to cash would serve only a punitive purpose." 764 So. 2d at 954. Regarding the sale of stock in three closely held corporations, this court disagreed, noting that Jerry could bid for the property and, in effect, purchase Sonja's interest. This court did not address the propriety of the forced sale of any real property.

In this case, the husband asserts that the marital residence carries a heavy sentimental value to him because he purchased it with his

inheritance funds and used it for the benefit of his former daughter-in-law and his grandchildren. He also contends that the wife wanted the marital residence sold purely out of spite to punish the husband, so, he says, the sale directive was instituted for an improper, punitive purpose. The trial court considered those arguments at the hearing on the husband's postjudgment motion, which was subsequently denied by the trial court. The trial court evidently determined that the sale was not ordered for a punitive purpose but, rather, as a means of generating liquid assets that could be easily divisible to ensure that both the husband and the wife received their equitable interest in the property and that the wife recovered her $51,050 outlay for obtaining alternative housing during the pendency of the case. Furthermore, at the postjudgment hearing, the trial court noted that the husband could still bid on the property and, in effect, purchase the wife's interest as he was requesting. The husband does not argue that a forced sale would be improper because he desired to purchase the other's interest, see 3 Brett Turner, Equitable Distribution of Property § 9:13 (4th ed. 2019), or that the trial court should have given him an option to purchase the marital

12

residence. See id. at § 9:15. Thus, we find no reason to reverse the judgment insofar as it orders a sale of the marital residence.

Likewise, we conclude that the trial court did not err regarding the distribution of the sale proceeds. In his postjudgment motion, the husband argued the following:

> "The Judgment for $51,050 in rental value was unsupported by the evidence and/or against the weight of evidence as there was no evidence that tended to show that this was a fair rental value for the accommodation received, that the transaction was at arm's length, that the money paid (some of which was paid in large and irregular sums) was strictly for the rental cost and not as a gift or for other purposes, and there was no clear showing that the [wife] would not have provided this money to her son if no benefit were received at all."

He does not reiterate those arguments on appeal, so they are considered waived. See Messer v. Messer, 621 So. 2d 1343, 1344 (Ala. Civ. App. 1993).

On appeal, the husband contends that the trial court erred to reversal by failing to apply the traditional alimony factors when determining whether the wife should be compensated for her living and rental expenses during the pendency of the case. In a divorce proceeding, a trial court can make a retroactive award of spousal support in a final judgment. See Ala. Code 1975, § 30-2-56(a)(2). The amount of retroactive

spousal support should be determined using the same factors used when awarding periodic or rehabilitative alimony. <u>Id.</u> However, the husband did not argue that point to the trial court, and we cannot consider it for the first time on appeal. <u>See</u> <u>Andrews v. Merritt Oil Co.</u>, 612 So. 2d 409 (Ala. 1992).

<u>Conclusion</u>

For the foregoing reasons, we affirm the judgment.

AFFIRMED.

Moore, P.J., and Hanson and Lewis, JJ., concur.

Edwards, J., concurs in the result, without opinion.