In January 1995, Larry D. Cooley and Marcia Cooley, husband and wife, sued Gulf Bank, Inc., and two of Gulf Bank's employees, M.E. Costigan and Kim S. McConnell, alleging a breach of contract, negligence, wantonness, negligent supervision, and fraudulent misrepresentation in regard to a construction-loan contract. (By stipulation, both Costigan and McConnell were dismissed as defendants, before trial.) In February 1996, the Cooleys moved to consolidate their lawsuit against Gulf Bank with a pending lawsuit against the building contractor, Ogletree Builders, Inc., and its owner, Charles Ogletree, because both cases involved the same dispute regarding negligent financial practices alleged to have been committed in regard to the construction of the Cooleys' residence. Gulf Bank moved for a summary judgment as to all counts; the court entered a summary judgment for Gulf Bank on the negligence, wantonness, and negligent-supervision claims, and on the fraudulent-misrepresentation claim insofar as it might relate to promissory fraud.
The breach-of-contract claim and the fraudulent-misrepresentation claim (aside from its promissory-fraud aspects) were tried before a jury. At the close of the Cooleys' case, the trial court directed a verdict (now known as a judgment as a matter of law ("JML"), see Rule 50, Ala.R.Civ.P.) in favor of Gulf Bank on the misrepresentation claim. On the breach-of-contract claim, the jury returned a *Page 1041 
$23,614 verdict against Gulf Bank and a $75,000 verdict against Charles Ogletree.
The Cooleys appeal, arguing that the court erred: (1) in entering a summary judgment in favor of Gulf Bank on their negligence, wantonness, and promissory-fraud claims; (2) in directing a verdict in favor of Gulf Bank on their misrepresentation claim; and (3) in instructing the jury as to damages for mental anguish regarding their breach-of-contract claim. Gulf Bank cross-appeals, arguing that the court erred in denying it a JML as to the breach-of-contract claim. This case was transferred to this court by the supreme court, pursuant to §12-2-7(6), Ala. Code 1975.
Summary Judgment
A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.;Chatham v. CSX Transp., Inc., 613 So.2d 341, 343 (Ala. 1993). In considering a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant and resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. Fincherv. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present evidence creating a genuine issue of material fact. Chatham, supra, at 343. The nonmovant must meet this burden by presenting "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989).
The undisputed facts are that the Cooleys contracted with Ogletree Builders, Inc., around 1991 to build a residence, for approximately $163,200. Larry Cooley was referred by Charles Ogletree to Kim McConnell, a loan officer for Gulf Bank, to obtain a construction loan. Larry Cooley entered a contract with Gulf Bank to finance the building project. One of the conditions of the loan was that Gulf Bank would oversee the building project by completing inspections and providing the advances or "draws," based on a draw schedule prepared by the bank. Specifically, Larry Cooley requested of McConnell that someone "ensure that the amount of draws [is] consistent with the amount of building going up because [he said he knew] nothing about building and estimating this sort of thing." Larry Cooley further asserted that McConnell assured him that Gulf Bank would "take care of it."
There was disputed testimony as to the accuracy of the draw schedule prepared by McConnell, as well as to who had authorized each draw. Mr. Cooley testified that he was residing in Maryland throughout the initial building phase and that he did not have the knowledge or expertise to authorize a draw to Ogletree Builders. Rather, Mr. Cooley said, he would receive a telephone call from McConnell in which McConnell would state that she had inspected the construction site and that, based on her assessment, a draw should be authorized. Any approval provided by Mr. Cooley was based on the representations made by McConnell. In addition, both Mr. Cooley and McConnell testified that a draw schedule was not prepared at the time the contract was signed with Gulf Bank, and McConnell further asserted that she had concerns with the draw schedule, because, she said, it was not made on the appropriate form for that particular kind of construction project. McConnell, who personally made each inspection and prepared each draw, stated that although it would have been improper to do so, she could not recall if she had provided Ogletree with advances/draws before her actual inspections were completed. Additionally, she indicated that several dates on the *Page 1042 
forms could have been incorrect and that there was no way to know if the percentages were based on actual work completed by the time each draw was provided to Ogletree Builders.
M.E. Costigan, McConnell's supervisor, substantiated McConnell's testimony that the bank had agreed to inspect and approve each draw before it was disbursed to Ogletree Builders and McConnell's testimony that the draw schedule did not accurately reflect the percentages for work completed. When questioned about whether the bank had erred in advancing Ogletree Builders payment for work not completed according to the draw schedule, Costigan admitted that he did not know.
In addition, the Cooleys provided a banking consultant, Don Coker, who testified, as an expert witness, that after reviewing the bank documents, the draw schedule, and invoices from suppliers of building materials, he noted inconsistencies regarding the dates that items were paid for versus the dates the work was actually completed. He further opined that the draw schedule was inadequate for the kind of construction job being performed. He concluded that it was improper to provide a check directly to the contractor without requiring that the check be endorsed by both the contractor and subcontractors to ensure that all parties received payment. There was testimony indicating that Charles Ogletree had failed to pay several suppliers and that this failure had caused the Cooleys to have to secure an additional $23,000 from the bank in order to continue the construction. Coker also stated that, in his opinion, Gulf Bank had breached the terms of the contract regarding its responsibility to perform inspections before authorizing an advance to the builder, and that in his opinion the actions of the bank did not conform with standard banking practices.
Charles Ogletree also testified that there were discrepancies in the dates of completion shown on the draw schedule as compared to the invoices showing the dates materials were supplied. He further admitted that by the time of the third draw his company had received at least $29,000 more in draws from Gulf Bank than had been paid out as expenses.
Clearly, based on substantial evidence submitted in this case, the jury could have concluded that the Cooleys did incur actual damage as a result of negligence and wantonness on ythe part of the bank. Further, although there was evidence indicating that the increase in the construction loan was caused by the builder's failure to pay suppliers and indicating that Charles Ogletree had underestimated the cost of the project, it is equally plausible that the additional costs incurred by the Cooleys were the direct result of inappropriate draws made to Ogletree Builders without proper inspections and that they were based on inaccurate recordings of the completion percentages, as admitted by Gulf Bank and corroborated by the expert testimony. In any event, because the Cooleys presented substantial evidence, their claims should have been presented to the jury. We reverse the summary judgment for Gulf Bank on the negligence and wantonness claims.
As to the promissory-fraud-claim, we conclude that the Cooleys did not meet the fifth element of a promissory-fraud cause of action — that at the time of the alleged misrepresentation, Gulf Bank had an intent to deceive and not to perform the promised act. To prove promissory fraud, a plaintiff must show: (1) a misrepresentation (2) of a material existing fact, (3) upon which the plaintiff relied,[1] (4) that proximately caused damage to the plaintiff, and *Page 1043 
(5) that at the time of the alleged misrepresentation, the defendant had the intent to deceive and not to perform the promised act. Pinyanv. Community Bank, 644 So.2d 919, 923 (Ala. 1994); Johnstonv. Green Mountain, Inc. 623 So.2d 1116, 1121 (Ala. 1993). We affirm the summary judgment as to the promissory-fraud claim.
 The Directed Verdict
Rule 50, Ala.R.Civ.P., as amended effective October 1, 1995, renamed the "motion for a directed verdict" and the "motion for a judgment notwithstanding the verdict" as a "motion for a judgment as a matter of law" and a "renewal of the motion for a judgment as a matter of law," respectively. The standard of review for a motion for a judgment as a matter of law is the same as for a motion for a directed verdict and a motion for JNOV. SeeMontgomery Coca-Cola Bottling Co., Ltd. v. Golson, 725 So.2d 996
(Ala.Civ.App. 1998).
Our supreme court has stated:
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3
(Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries v. Pate, 678 So.2d 724 (Ala. 1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Delchamps, Inc. v. Bryant, 738 So.2d 824, (Ala. 1999).
The elements of a misrepresentation claim, regardless of whether the misrepresentation is alleged to have been made willfully, recklessly, or mistakenly, see § 6-5-101, Ala. Code 1975, are (1) a false representation (2) of a material existing fact (3) on which the plaintiff relied (4) that proximately resulted in damage to the plaintiff. See George v. AssociatedDoctors Health Life Ins. Co., 675 So.2d 860, 862 (Ala. 1996). The Cooleys presented evidence indicating that although Gulf Bank had promised to disburse funds based on the draw schedule, physical inspections, and the percentage of work completed, Gulf Bank admitted to providing Ogletree Builders with draws before the work was completed and without properly documented inspections. Because the Cooleys presented substantial evidence in support of their misrepresentation claim, that claim should have been submitted to the jury. Reviewing the evidence in a light most favorable to the Cooleys, we conclude that the jury could have found that the additional costs incurred by the Cooleys represented actual damage incurred as a result of the actions of Gulf Bank, or, in the alternative, that the Cooleys were entitled to at least nominal damages for the admitted misrepresentations by Gulf Bank. See LaCoste v. SCI Alabama Funeral Services, Inc.,689 So.2d 76 (Ala.Civ.App. 1996). Insofar as it relates to the misrepresentation claim, the judgment is reversed.
 The Jury Verdict
The Cooleys argue that the trial court erred in failing to instruct the jury *Page 1044 
that it could award damages for mental anguish if it found in favor of the Cooleys on the breach-of-contract claim. We agree. The Cooleys presented substantial evidence of a breach of contract, and the jury awarded them $23,614 from Gulf Bank. The jury verdict has not been shown to be improper, given the presumption of correctness afforded a jury verdict. Valley Properties, Inc. v. Strahan, 565 So.2d 571
(Ala. 1990); Life Ins. Co. of Georgia v. Smith, 719 So.2d 797
(Ala. 1998). However, because the jury found in favor of the Cooleys on their breach-of-contract claim, the jury should have been allowed to consider an exception to the rule relating to damages for mental suffering or anguish, as requested by the Cooleys. See Sexton v. St. Clair Federal Sav. Bank, 653 So.2d 959,961 (Ala. 1995) (supreme court upheld award of damages for mental anguish in a breach-of-contract action, as an "exception based on a `contractual duty' that is `coupled with matters of mental concern or solicitude' . . . in situations involving contracts relating to a plaintiff's current residence"). See also, Talent Tree Personnel Serv., Inc. v. Fleenor, 703 So.2d 917
(Ala. 1997). The trial court erred in not instructing the jury that it could award damages for mental anguish on the breach-of-contract claim.
As to Gulf Bank's cross appeal, we conclude that the court properly denied Gulf Bank's motion for a directed verdict. The Cooleys submitted substantial evidence to support their breach-of-contract claim.
The judgment is affirmed in part and reversed in part, and the case is remanded for a new trial.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR A NEW TRIAL.
Robertson, P.J., and Monroe, J., concur in the result.
Crawley and Thompson, JJ., concur in part and dissent in part.
[1] We note that in Foremost Ins. Co. v. Parham, 693 So.2d 409
(Ala. 1997), our supreme court discarded the "justifiable reliance" standard and returned to a "reasonable reliance" standard. However, the new standard applies to all fraud cases filed after March 14, 1997, and, thus, does not apply to the present case, which was filed in January 1995.