876 So.2d 1111 (2003)
AVIS RENT A CAR SYSTEMS, INC., et al.
v.
Cindy Wiegel HEILMAN and Rosalind Davis Meyer.
Avis Licensee Defendants,
v.
Cindy Wiegel Heilman and Rosalind Davis Meyer.
1020672 and 1020667.
Supreme Court of Alabama.
September 12, 2003.
*1114 Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellants Avis Rent A Car Systems, Inc., Avis Rent A Car, Inc., and Cendant Corporation.
Billy C. Bedsole of Stockman & Bedsole, Mobile, for appellants Coates Motor Rental, Inc.; Mobile U-Drive It, Inc.; Car & Truck Rentals, Inc.; Clark Car & Truck Rental, Inc.; and Southeastern Car & Truck Rentals, Inc.
Russell Jackson Drake and Charlene P. Ford of Whatley Drake, L.L.C., Birmingham; and Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellees.
WOODALL, Justice.
Avis Rent A Car Systems, Inc.; Avis Rent A Car, Inc.; and Cendant Corporation (hereinafter collectively referred to as "Avis");[1] and "the Avis Licensee Defendants," namely, Coates Motor Rental, Inc.; Mobile U-Drive It, Inc.; Car & Truck Rentals, Inc.; Clark Car & Truck Rental; and Southeastern Car & Truck Rentals, Inc. (hereinafter collectively referred to as "the licensees"),[2] appeal from an order certifying a class action pursuant to Ala. R. Civ. P. 23(b)(3); the class action asserts claims of breach of contract, unjust enrichment, *1115 and conspiracy. We affirm the order in part, vacate it in part, and remand.
This dispute began in 1998, when Cindy Wiegel Heilman and Rosalind Davis Meyer each rented automobiles from Avis or the licensees at the airports in Birmingham and Montgomery, respectively, and paid, in addition to a fee for a rental period, charges described in their "transaction" documents as (1) an "8% tax recovery surcharge" ("the surcharge"), and (2) a 10% "concession fee recoupment" ("the recoupment").[3] With each transaction, the renters received three documents.
When Heilman and Meyer took possession of their rented vehicles, they each received a "rental document," stating that they would be charged, among other things, the following:
"10.00% CONCESSION FEE RECOUP TAX: .000% 8% TAX RECOVERY SURCH."
Heilman and Meyer each signed her respective rental document. The rental document was accompanied by a "rental jacket," containing a list of "rental terms and conditions." The rental jacket provided, in part:
"1. These terms and conditions, the rental document signed by me, and a return record with computed rental charges together constitute the rental agreement between myself and Avis Rent A Car System, Inc., or the independent Avis System Licensee identified on the rental document.
"....
"5. Rental Charges. I will pay for the number of miles I drive and the length of time I rent the car at the time and mileage rates indicated on the rental document. The minimum charge is one day (24 hours) plus mileage, or a fixed fee. Miles determined by reading the factory-installed odometer. Daily charge applies to consecutive 24 hour periods starting at the hour and minute the rental begins. I'll pay charges for miscellaneous services which apply to the rental. On tour rate rentals an additional per day charge will apply to certain renters as specified on the rental document.
"6. I'll pay all sales, use, rental, and excise taxes, including tax-related surcharges."
(Emphasis added.) Finally, upon the return of each car, the renter received a "return record." The return record listed the itemized charges, including the surcharge and the recoupment. Heilman was subsequently reimbursed by her employer, Douglas Stewart Company, Inc. ("Stewart"), for the cost of the rental.
On March 13, 2000, Heilman and Meyer sued Avis and the licensees on behalf of themselves and "all others similarly situated," alleging that the surcharge and the recoupment were unauthorized by law and that they had been assessed in violation of the terms of the transaction documents. They sought compensatory and punitive damages under several theories, including breach of contract, fraud, suppression, and misrepresentation. The complaint also contained a conspiracy count, which alleged in toto:
"42. [Heilman and Meyer] reallege the allegations contained in all preceding paragraphs of the complaint.
"43. Avis [and the licensees] entered into a conspiracy beginning as early as *1116 1990 to, among other things, suppress the information and/or to make the false representations as aforesaid.
"44. [Avis and the licensees] have done those things they conspired and concerted to do. As a proximate consequence thereof, [Heilman and Meyer] and the class [have] been injured as aforesaid.
"WHEREFORE, premises considered, [Heilman and Meyer] pray for judgment for compensatory damages in an amount to be determined by the jury and punitive damages, interest and costs."
They also sought injunctive relief and restitution under a theory of "unjust enrichment."
On July 30, 2002, Heilman and Meyer moved to certify the action as a class action, pursuant to Rule 23(b)(3). On December 17, 2002, the trial court entered an order, stating in part:
"With respect to the following causes of action: breach of contract, unjust enrichment, and conspiracy, this lawsuit shall be maintained as a class action on behalf of the following class of [Heilman and Meyer]:
"All persons, firms and corporations or their employees or agents (other than [Avis and the licensees], their parents and subsidiaries and their directors, officers, employees, agents or representatives) who rented cars or other vehicles from one or more of the [Avis and the licensees] at any time since December 1, 1990, at car rental locations in the State of Alabama."
(Emphasis added.) The trial court declined to certify the fraud-based claims for class treatment.
Moreover, the court stated: "In written responses and in oral argument, [Heilman and Meyer] have confirmed that they seek to recover solely on their written contracts.... [Avis and the licensees] do not argue that the terms of the written contracts were varied by oral agreements. Accordingly, [Heilman and Meyer's] breach of contract claims are limited to their written contracts...." (Emphasis added.) Avis and the licensees appealed, contending that the trial court's analysis and holding fail to satisfy the Rule 23 requirements of class certification.
It is well settled that the party seeking certification of a Rule 23(b)(3) class must demonstrate the existence of all the criteria set forth in Rule 23(a), namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, plus the Rule 23(b)(3) requirements of (1) predominance and (2) superiority. See Reynolds Metals Co. v. Hill, 825 So.2d 100, 103 (Ala.2002). More specifically, putative Rule 23(b)(3) class representatives must demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).
A number of these criteria, such as the Rule 23(a) requirements of commonality and typicality and the Rule 23(b)(3) requirement of predominance, are analytically similar. Heartland Communications, Inc. v. Sprint Corp., 161 F.R.D. 111, 117 (D.Kan.1995). Avis and the licensees contend, in substance, that the class was certified without the requisite showing of Rule 23(a) typicality and adequacy of representation, or of Rule 23(b)(3) predominance.

I. Typicality and Adequacy
Avis and the licensees argue that Heilman and Meyer are not similarly situated with all members of the certified class, and, therefore, that they cannot adequately represent the class. They also argue *1117 that Heilman lacks standing to sue, either as an individual or as a class representative. We first address the typicality of the claims of Heilman and Meyer, as that factor relates to the adequacy of their class representation.

A. Adequacy of Heilman and Meyer as Class Representatives
Avis and the licensees contend that Heilman and Meyer cannot adequately represent the class certified by the trial court, because, they insist, the circumstances under which they contracted with Avis and the licensees are atypical of the circumstances under which other class members contracted with Avis and the licensees. We find some merit in this contention.
"`The essence of the typicality requirement is that the relationship between the injury to the class representatives and the conduct affecting the entire class of plaintiffs must be sufficient for the court to properly attribute a collective nature to the challenged conduct.'" Atlanta Cas. Co. v. Russell, 798 So.2d 664, 668 (Ala.2001) (quoting Warehouse Home Furnishing Distribs., Inc. v. Whitson, 709 So.2d 1144, 1149 (Ala.1997)). The typicality requirement " "serve[s] as [a] guidepost[] for determining whether under the particular circumstances ... the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Atlanta Cas. Co., 798 So.2d at 666-67 (quoting General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 158, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).
Heilman and Meyer base their claims on two species of fee charged by Avis and the licensees in connection with their vehicle rentals: the surcharge and the recoupment. The trial court certified a class composed of individuals and corporations that had rented cars from Avis or the licensees. However, the manner in which the challenged fees were presented to, or affected, the putative class members differed considerably among the members, depending on (1) whether the renter was an individual or a corporation; (2) whether the renter was a "corporate traveler"; and (3) whether a national corporate contract accorded the renter "preferred" or "nonpreferred customer" status.
A significant percentage of customers of Avis and the licensees are "corporate travelers," that is, individuals traveling in the employ of corporations that have negotiated "national corporate contracts" with Avis. The national corporate contracts typically provide, as the licensees explain it, "a set rental rate" for the corporation's employees, "in consideration [for] the [corporation's] commitment to rent from Avis." Brief of licensees, at 4. In that connection, Robert W. Klyce, the owner and general manager of one of the licensees, testified by affidavit, as follows:
"Avis enters into contracts with large corporations where that corporation tells each one of its employees who might visit any location in Alabama, to rent automobiles from Avis. The corporation and Avis agree on the rate and it is also further agreed that the corporation will pay for all charges, which would include the concession fee recoupment of ten percent and the tax recovery surcharge of [eight] percent.... This is completely different from a situation in which an individual might book a reservation through a travel agent or personally call an Avis Reservation Agent to book a reservation. In these latter two situations, the individual renter had no obligation to Avis even after booking a reservation if they changed their mind or failed to show up for any reason. These certain individuals do not have a contract *1118 until they sign one when they actually rent the car. The corporate renter's rate is predetermined by an agreement between their employer and Avis Rent A Car, Inc."
Moreover, approximately one-third of the corporate travelers do not pay the recoupment, the result, apparently, of negotiations between their corporate employers and Avis. Additionally, approximately 50% of Avis's corporate-traveler customers are designated as "preferred customers." Preferred-customer status enables the corporate traveler to rent Avis vehicles without signing rental documents, either upon receipt or return of the automobiles.
The disparate circumstances under which Avis's vehicles were rented deprive the claims of Heilman and Meyer of the typicality necessary to sustain certification of a class as comprehensive as the one the trial court certified. Otherwise stated, the alleged injuries of the named representatives are premised on facts and relationships fundamentally different than those involving many of the class members they seek to represent. The implications of these disparities are illustrated by the breach-of-contract allegations in the complaint:
"24. [Heilman and Meyer] and the members of the class they represent, entered into contracts with defendant Avis Systems and with various of its licensees. Pursuant to the terms of these contracts, they agreed to rent automobiles from said defendants and to pay for said rentals agreed upon individual, corporate, or affinity group rates, with any agreed upon discounts.
"25. As part of said contracts relevant herein, [Avis and the licensees] agreed that [Heilman and Meyer] and the class would pay only `rental charges' and `all sales, use, rental and excise taxes including tax-related surcharges.' [Avis and the licensees] state in their contracts that the tax was zero.

"26. The terms and conditions of the contract make no provision whatsoever, for the imposition of an airport concession fee.

"27. [Avis and the licensees] breached their contracts with [Heilman and Meyer], and with the class they represent, by making unauthorized and illegal charges, which had not been agreed upon; by effectively increasing agreed upon rental rates through the making of excess and deceptive charges that consumers would expect to be included in the rental rates they were charged; and by charging [the surcharge], [the recoupment], and other surcharges that are not the contractually specified taxes, not related to the specified taxes and not authorized by law. Finally, any contractual provision authorizing the imposition of the license tax paid by Avis Systems or its licensees upon Avis customers is void as against the public policy of Alabama.
"28. As a proximate consequence of said breach of contract, [Heilman and Meyer] have been injured in that they have been caused to pay excessive amounts of money to [Avis and the licensees]."
(Emphasis added.)
One of the elements of a breach-of-contract claim under Alabama law is the existence of "a valid contract binding the parties." Reynolds Metals Co., 825 So.2d at 105. "`The requisite elements of [a valid contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" Ex parte Grant, 711 So.2d 464, 465 (Ala.1997) (quoting Stength v. Alabama Dep't of Fin., Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)).
*1119 Heilman and Meyer's breach-of-contract claims, as stated in the complaint, are premised on the theory that the class members (1) actually rented vehicles from Avis and the licensees; (2) were presented with the terms of the transaction documents; (3) formed an expectation based on those terms; (4) had at least a theoretical opportunity to negotiate the terms; and (5) unwittingly paid the challenged fees. The circumstantial disparities in this case center on the manner in which the respective contracts were formed and concern the relative opportunities of the putative class members for mutual assent to a bargained-for exchange.
The class certified by the trial court includes corporations, which do not, under the alleged facts, rent vehicles. Instead, they negotiate contracts with Avis that are national in scope, under which their employees, in using the facilities of Avis and the licensees, are bound. The individual contracts of Heilman and Meyer bear little resemblance to those national contracts, either in scope or in negotiability.
The class also includes those individuals who, unlike Heilman and Meyer, were corporate travelers, using vehicles under agreements between their employers and Avis. Also included are individuals, who, unlike Heilman and Meyer, rented cars pursuant to their employer's preferred-customer agreement with Avis. Indeed, it appears from the record that these preferred customers never received a rental jacket containing the terms on which Heilman and Meyer rely in stating their breach-of-contract claims. Consequently, unlike Heilman and Meyer, the corporate travelers take possession of their rental vehicles without even a theoretical opportunity to negotiate the terms of the rental.[4]
Actually, this case involves at least three distinct sets of customers  (1) corporations, (2) corporate travelers, and (3) "individual renters," such as Heilman and Meyer. The claims of the individual renters are based on facts and circumstances, including the written terms on the rental jacket, that are immaterial to the claims of members of the other sets. The" `relationship between the injury to the class representatives and the conduct affecting the entire class of plaintiffs [is insufficient] for the court to properly attribute a collective nature to the challenged conduct.'" Russell, 798 So.2d at 668 (quoting Warehouse Home Furnishing Distribs., 709 So.2d at 1149).
For these reasons, the trial court erred in including corporations and corporate travelers, as that term is used in this opinion, within the class it certified. To the extent the certification order includes those entities, it is vacated as overly broad. We next consider whether Heilman has standing to represent a class of individual renters.

B. Heilman's Standing
Avis and the licensees contend that Heilman lacks standing to sue, because she has been reimbursed by Stewart for the rental fee she paid.[5] Specifically, Avis argues that, because she was reimbursed, Heilman has no "cognizable claim for relief and thus cannot serve as an adequate class representative." Brief of Avis, at 68. We disagree with this argument.
To establish that she has standing, Heilman must "demonstrate the existence *1120 of: (1) ... `an invasion of a legally protected interest'; (2) a `causal connection between the injury and the conduct complained of'; and (3) a likelihood that the injury will be `redressed by a favorable decision.'" Stiff v. Alabama Alcoholic Beverage Control Bd., [Ms. 1010169, May 2, 2003] ___ So.2d ___, ___ (Ala.2003) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (emphasis added).
It is well settled that an action will lie for breach of contract, even where the plaintiff has suffered no actual damage. Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 128 (Ala.1989); James S. Kemper & Co. v. Cox & Assocs., Inc., 434 So.2d 1380, 1385 (Ala.1983). This is so, because "`[a]n unexcused failure to perform a contract is a legal wrong. Action will lie for the breach although it causes no injury.... The party whose legal right has been invaded by such breach is entitled to at least nominal damages, for the law recognizes that every injury imports damages.'" Cooley v. Gulf Bank, Inc., 773 So.2d 1039, 1048 (Ala.Civ.App.1999) (Crawley, J., concurring in part and dissenting in part) (quoting 11 Williston on Contracts § 1339A, at 206, 208 (3d ed.1968)) (emphasis added).
Heilman, not Stewart, executed the rental contract with Avis. Privity exists between Heilman and Avis, not between Stewart and Avis. The breach-of-contract count alleges the "invasion of a legally protected interest," for standing purposes, regardless of the reimbursement of her alleged actual damages. Thus, the fact that she was reimbursed for the cost of the rental does not deprive Heilman of standing to assert a breach-of-contract claim.

II. Predominance
Avis and the licensees contend that the trial court erred in certifying all three claims for class-action treatment, because, they argue, Heilman and Meyer failed to demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rule 23(b)(3). "`The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Voyager Ins. Cos. v. Whitson, 867 So.2d 1065, 1071 (Ala.2003) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). "The predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." Heartland Communications, Inc., 161 F.R.D. at 117; see Cheminova America Corp. v. Corker, 779 So.2d 1175, 1181 (Ala.2000). We first address the predominance question in the context of the breach-of-contract claims.

A. Breach-of-Contract Claims
Avis and the licensees contend that individual fact inquiries will necessarily predominate over common questions of law or fact in the context of the breach-of-contract claims, and that the class is otherwise unmanageable. More specifically, they argue that the transaction documents that form the contracts are ambiguous, and they cite a line of authority holding that a breach-of-contract claim may not be certified for class-action resolution if the contract contains ambiguities that cannot be resolved through ordinary canons of construction. See, e.g., General Motors Acceptance Corp. v. Dubose, 834 So.2d 67 (Ala.2002); Reynolds Metals Co., supra; Compass Bank v. Snow, 823 So.2d 667 (Ala.2001); Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400 (Ala.2001); Mann v. *1121 GTE Mobilnet of Birmingham, Inc., 730 So.2d 150 (Ala.1999); Lackey v. Central Bank of the South, 710 So.2d 419 (Ala.1998). The rationale for the rule applied in those cases is that, where extrinsic evidence is required to resolve an ambiguity, the finder of fact would have to "determine how each class member ... interpreted the ambiguous language." Dubose, 834 So.2d at 73. As the licensees articulate the argument: "[E]ach one of the class members would have to be examined as to their subjective state of mind and the extent of each class member's knowledge when they rented the automobile from one of the five Alabama Licensees." Brief of licensees, at 30 (emphasis added).
In its certification order, the trial court stated that it found no "ambiguity which necessitates or which could be resolved through extrinsic evidence." Nevertheless, Avis and the licensees contend that the contracts are ambiguous as to their right to collect the surcharge and the recoupment from renters. They argue that the three documents Heilman and Meyer received  the rental document, the rental jacket, and the return record  constitute the entire contract. The ambiguity arises, they argue, out of the rental jacket, which contains the "rental terms and conditions." The rental jacket does not mention the recoupment at all, and, in § 6, mentions "tax-related surcharges" in the context of "all sales, use, rental, and excise taxes." They reason that the absence of any reference in the rental terms and conditions to the recoupment, combined with the itemized charge for the recoupment on the rental document and the return record, creates an ambiguity as to whether the customers agreed to pay the recoupment.
Similarly, Avis and the licensees reason that, although the rental document and the return record both itemize the surcharge, and although § 6 of the rental terms and agreements authorizes them to charge a "tax-related surcharge," the surcharge might not be a "tax-related surcharge," as that term is used in § 6. The phrase "tax-related surcharge" could, in other words, be construed as referring only to the species of taxes specifically listed in § 6, namely, "all sales, use, rental, and excise taxes." On the other hand, Avis and the licensees insist, the phrase could be construed as authorizing a surcharge, based on any species of tax that would constitute ordinary overhead, such as, sales taxes, ad valorem taxes, income taxes, or employee-withholding taxes. These ambiguities, they insist, will require testimony from each class member regarding the intent of the member as to the surcharge and the recoupment. They contend that these inquiries will overwhelm the common questions of law or fact, thus rendering class-action treatment of the breach-of-contract claims inappropriate. We disagree.
Not every ambiguity in contract terms necessitates extrinsic evidence. Recently, in the class-action context, we explained:
"When a trial court is [faced] with a contract issue, it is important for the trial court to determine as soon as practicable the `threshold issue' whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must '"determine the force and effect of the terms of the contract as a matter of law."' Cherokee Farms, Inc. [v. Fireman's Fund Insurance Co.], 526 So.2d [871] at 873 [(Ala.1988)], quoting Wigington v. Hill-Soberg Co., 396 So.2d 97, 98 (Ala.1981). However, if the trial court finds the contract to be ambiguous, it `must employ established rules of contract construction to resolve the ambiguity.' Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). If the application of such rules is not sufficient *1122 to resolve the ambiguity, factual issues arise:
"`If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.'
"Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853 (Ala.1991)."
Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400, 404-05 (Ala.2001).
We agree with the trial court to the extent that it found that the transaction documents contained no "ambiguity which necessitates or which could be resolved through extrinsic evidence." Regarding the recoupment, it is clearly itemized on the rental document and the return receipt. The complete absence of any reference to the recoupment, or to an arguably related species of charge, on the rental jacket does not create an ambiguity.
The surcharge is only slightly more problematic. An ambiguity exists where contract terms are "reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." Johnson, 822 So.2d at 404. However, a contract is not ambiguous simply "`because the parties allege different constructions of [it].'" Ex parte University of South Alabama, 812 So.2d 341, 345 (Ala.2001) (quoting Yu v. Stephens, 591 So.2d 858, 859 (Ala.1991)).
Heilman and Meyer argue that the rental contract is not ambiguous insofar as the surcharge is concerned. The allegation of ambiguity is made by Avis and the licensees, who drafted the transaction documents. Although they have succeeded in articulating possible alternative meanings for the term, they have identified no ambiguity that cannot be resolved by ordinary canons of construction, such as ejusdem generis[6] and noscitur a sociis.[7]
The predominant question in this case is simply whether the recoupment and the surcharge were authorized by the terms of the written contract, which consists of the three relevant documents. That question and the facts necessary to its resolution are common to the claims of Heilman, Meyer, and the putative class members, who, like Heilman and Meyer, were neither corporations nor corporate travelers, and who rented vehicles from the defendants. Consequently, the trial court did not err in certifying a class composed of those members for resolution of the breach-of-contract claims.

B. Unjust-Enrichment Claim
Against the certification of the unjust-enrichment claim, however, the "subjective-state-of-mind" arguments of Avis and the licensees stand on better ground. To prevail on a claim of unjust *1123 enrichment, the plaintiff must show that the "`defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.' "Dickinson v. Cosmos Broad. Co., 782 So.2d 260, 266 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986)) (some emphasis omitted; some emphasis added). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Battles v. Atchison, 545 So.2d 814, 815 (Ala.Civ.App.1989) (emphasis added).
"[T]he remedy of restitution is designed to remedy the detrimental effects caused by unjust enrichment." Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1351 (Ala.1991). "A claim for restitution is equitable in nature, and permits a trial court to balance the equities and to take into account competing principles to determine if the defendant was unjustly enriched." United Coastal Indus., Inc. v. Clearheart Constr. Co., 71 Conn.App. 506, 513, 802 A.2d 901, 906 (2002) (emphasis added). Consequently, "'[t]he success of a claim for unjust enrichment depends on the particular facts and circumstances of each case.'" DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 245, 776 A.2d 413, 419 (2001) (quoting Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 184, 531 A.2d 887, 889 (1987)).
Because unjust-enrichment claims are fact specific to each case, this Court has repeatedly held that such claims are unsuitable for class-action treatment. Funliner of Alabama, L.L.C. v. Pickard, 873 So.2d 198, 211 (Ala.2003) (unjust-enrichment claims based on allegations of "mistake or fraud" require an "individualized inquiry into the state of mind of each plaintiff"); Whitson, 867 So.2d at 1074 (unjust-enrichment claims based on an alleged "mistake of fact" could not be certified for class-action treatment, because "[c]lass members would be required to demonstrate mistake of fact on an individual basis"); Smart Professional Photocopy Corp. v. Childers-Sims, 850 So.2d 1245, 1249 (Ala.2002) ("proof essential to support the [class-action plaintiffs' claims of unjust enrichment... defeats the predominance and superiority requirements of Rule 23(b)(3)"); Reynolds Metals Co. v. Hill, supra.
This case is no exception. Heilman and Meyer contend that they "have established [payment by] mistake," and that the conduct of the defendants is "unconscionable." Brief of Heilman and Meyer, at 51. Under the rationale of Pickard, Whitson, Childers-Sims, and Reynolds Metals, resolution of the unjust-enrichment claim would require an individualized inquiry into the subjective "state of mind" of each class plaintiff and the facts and circumstances surrounding each rental transaction. Pickard, 873 So.2d at 211. This is so, because the "knowledge and sophistication of customers varies from individual to individual." Whitson, 867 So.2d at 1076. The need for such inquiry defeats the predominance and superiority requirements of Rule 23(b)(3). Smart Professional Photocopy, 850 So.2d at 1252. For these reasons, the trial court erred in certifying the unjust-enrichment claim for class-action resolution.

C. Conspiracy Claim
Avis and the licensees contend that the trial court erred in certifying the conspiracy claim. Specifically, they argue that the complaint does not allege conspiracy to breach a contract. The conspiracy count of the complaint is specifically directed, they insist, to the various species of *1124 fraud originally alleged. We agree with these contentions. The complaint merely alleges that "Avis [and the licensees] entered into a conspiracy beginning as early as 1990 to, among other things, suppress the information and/or to make the false representations as aforesaid." (Emphasis added.)
"A conspiracy cannot exist in the absence of an underlying tort." Willis v. Parker, 814 So.2d 857, 867 (Ala.2001)." `[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy.'" Id. (quoting Jones v. BP Oil Co., 632 So.2d 435, 439 (Ala.1993)). The conspiracy claim is not directed to the breach-of-contract claims, and none of the fraud claims were certified for class-action resolution. Therefore, the trial court erred in certifying the conspiracy claim for class-action resolution.
Finally, Avis[8] contends that it has asserted as an affirmative defense the "voluntary payment doctrine," and argues that the "proof necessary to establish the elements of a voluntary payment defense creates the individualized type of fact inquiries which operate to bar class certification." Brief of Avis, at 46-47. To be sure, Avis did raise voluntary payment as an affirmative defense in its answer to the complaint. Specifically, it stated: "[Heilman and Meyer], and each of the class members, voluntarily paid the surcharge and concession fees made the basis of this action and thus are barred from recovery under the voluntary payment doctrine." In the answer, however, it was posed as a defense to the merits, not as a defense to class certification, as it is presented on appeal. Indeed, Avis never presented such an argument to the trial court.
It is well established that this Court will not "reverse a trial court's judgment based on arguments not presented to [it]." Brown v. Wal-Mart Stores, Inc., 864 So.2d 1100, 1104 (Ala.Civ.App.2002). See also Pate v. Rollison Logging Equip., Inc., 628 So.2d 337, 343 n. 2 (Ala.1993); Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). Consequently, we decline to consider the voluntary-payment argument in opposition to certification of any of the claims involved in this appeal.

III. Summary
The trial court erred in certifying the unjust-enrichment claim and the conspiracy claim for class-action treatment. The court also erred in including in the class corporations and "corporate travelers." To that extent, the certification order is vacated.[9] The trial court did not err, however, in certifying for class-action treatment the breach-of-contract claims of the "individual renters." To that extent, the order is affirmed. The case is remanded for proceedings consistent with this opinion.
*1125 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
But for two exceptions, I concur. The first exception is that I do not agree entirely with the holding that "the trial court erred in including corporations and corporate travelers, as that term is used in this opinion, within the class it certified," 876 So.2d at 1119, and I do not agree with the rationale for that holding. The second exception is that I express no opinion on the holding that "the trial court erred in certifying the unjust-enrichment claim for class-action resolution," 876 So.2d at 1123.
Some corporations and corporate travelers should remain members of the class  specifically, each (if any) which or who entered, with one or more of the defendants, essentially the same form of contract composed of the same three form documents containing or omitting the same provisions about the tax recovery surcharge and the concession fee recoupment as the class representatives Heilman and Meyer themselves entered. The class contract claim does not entail any individualized dispute or issue about the negotiation or formation of these contracts or any dispute or issue about individualized expectations of the parties. As the main opinion so accurately observes, "[t]he predominant question in this case is simply whether the recoupment and the surcharge were authorized by the terms of the written contract, which consists of the three relevant documents," 876 So.2d at 1122. As the main opinion also accurately observes, these documents do not contain any "ambiguity which necessitates or which could be resolved through extrinsic evidence," 876 So.2d at 1121 (quoting the trial court order). Thus I respectfully submit that the judgment of this Court should be modified to include in the part affirmance an affirmance of the inclusion of corporations and corporate travelers which or who entered contracts not materially different from those entered by the class representatives, within the certified class.
On the other hand, I do agree that corporations and corporate travelers which or who entered contracts materially different from those entered by the class representatives should be excluded from the class. The class representatives are not typical and adequate for the purpose of enforcing contracts materially different from those they themselves entered. For instance, at pages 3 and 4 of their brief to us, the class representatives, who are not "preferred renters," concede that the "Preferred Renters ... are not eligible to recover any airport concession fee damages." Yet those preferred renters, concentrating on their own distinct situation, might well perceive that they are due some airport concession fee damages on some theory not developed by the class representatives.
NOTES
[1] Avis describes the relationship of the Avis entities as follows:

"At the time of the transactions in issue, the Defendant Avis Rent A Car, Inc., was a publicly traded company whose subsidiary, Avis Rent A Car Systems, Inc., operated rental facilities throughout the world. The Defendant, Cendant Corporation, acquired the Avis trademark in 1996, which it licensed to Avis Rent A Car, Inc., as well as licensees. Cendant also operates and maintains the Wizard System, which performs data processing, reservation rental and other related services for both the Avis and licensee owned locations.... Effective March 1, 2001, the Avis entities became wholly owned subsidiaries of Cendant."
Brief of Avis, at 6 n. 2.
[2] In their answer, the licensees explained that they "individually and separately operate car rental businesses in [Huntsville, Mobile, Birmingham, Dothan, and Montgomery], and [that] each is a separate licensee [or franchisee] of the Defendant [Avis]." Collectively, the licensees own and operate all of the "Avis car rental locations in Alabama." Brief of licensees, at 4.
[3] Heilman and Meyer rented their vehicles in August 1998 and September 1998, respectively.
[4] This is especially true of those renters who never see the terms made the basis of the breach-of-contract claims in this case.
[5] It is undisputed that Stewart does not have a corporate contract with Avis. Therefore, Heilman is not a corporate traveler, as that term is used in this opinion.
[6] "The principle of `ejusdem generis' provides that `general words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated.'" Ex parte Emerald Mountain Expressway Bridge, L.L.C., 856 So.2d 834, 842 (Ala.2003) (quoting Lambert v. Wilcox County Comm'n, 623 So.2d 727, 731 (Ala.1993)).
[7] "[The doctrine of noscitur a sociis] provides that `where general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous to that of the less general.'" Ex parte Emerald Mountain Expressway, 856 So.2d at 842-43 (quoting Winner v. Marion County Comm'n, 415 So.2d 1061, 1064 (Ala.1982)).
[8] In this Court, the licensees do not argue that the voluntary-payment defense defeats class certification. An argument not made on appeal is abandoned or waived. Bettis v. Thornton, 662 So.2d 256, 257 (Ala.1995). "Issues not argued in the appellant's brief are waived." Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994).
[9] Avis and the licensees catalog numerous "individual fact inquiries," Brief of Avis, at 66, which, they insist, render this class action unmanageable. This argument is thoroughly eviscerated by our conclusion that the class as properly certified will involve (1) no oral agreements, (2) no national contracts, (3) no corporate plaintiffs, (4) no corporate travelers, (5) no standing issues, (6) no unjust-enrichment claims, and (7) no conspiracy claims. In short, there is no sustainable objection on manageability grounds to a properly certified class in this case.